## *In re* T. H. SIMMONS.

No. A.-975.    Opinion Filed January 9, 1911.

1.    MUNICIPAL CORPORATIONS—Charters—Ordinances—Constitutional Powers. Under the constitutional provision, sec. 3, art. 18, Const., providing that: "Any city containing a population of more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution 'and laws of this state"—a city adopting a charter is accorded full power of local self-government, and as such municipal corporation, under its charter, it has power to enact, ordain and enforce ordinances for the purpose of protecting the public peace, order, health, morals and safety of the inhabitants, even though general statutes exist relating to the same subjects.

2.    SAME—Intoxicating Liquors—Prohibiting Sale. The adoption of the prohibition ordinance by the people, and the enactment of the prohibition law, does not prevent cities of the first class from enacting ordinances prohibiting the sale of intoxicating liquor within the limits of such cities.

3.    CRIMINAL LAW—Prosecution by Either State or City. The same act committed by a person may constitute a crime against the state law and a different petty offense against the city ordinance, and the two offenses being different, the offender may be proceeded against under either the city ordinance or the state law, or both.

4.    SAME—Intoxicating Liquors—Offenses. A conviction under an ordinance of a city of the first class for being in possession of intoxicating liquors with intent there to barter, sell, give away or otherwise furnish contrary to law is not a bar to a prosecution for the same act under the prohibitory law of the state.

5.    JURY—Right to Trial by Jury—Constitutional Law. The Constitutional provision (Bill of Rights, sec. 19) that "The right of trial by jury shall be and remain inviolate" was adopted with reference to the procedure theretofore generally existing, and if, in a given class of offenses, trials without a jury were the prevailing rule, this rule is not changed by this constitutional provision.

6.    SAME—Municipal Courts—Jury Trial on Appeal. Where a statute authorizes a trial before a municipal court without a jury for a violation of a city ordinance, and at the same time secures to the defendant an appeal therefrom, hampered by no unreasonable restrictions, to an appellate court where he has a right to a trial by jury, such summary proceeding is not in conflict with

the constitutional provisions: "The right of trial by jury shall be and remain inviolate" (Bill of Rights, sec. 19); "In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed." (Bill of Rights sec. 20.)

7. **CRIMINAL LAW—Municipal Courts—Nature of Prosecution.** A prosecution in a municipal court for a violation of a municipal ordinance which prohibits an act which is also an offense under the general criminal law of the state is a quasi criminal proceeding.

8. **COURTS—Municipal Courts—Style of Prosecution.** A prosecution in a municipal court for a violation of a city ordinance may be in the name of the city.

(Syllabus by the Court.)

*Original Proceeding by Habeas Corpus.*

Application by T. H. Simmons for writ of *habeas corpus.* Writ denied.

The petitioner, T. H. Simmons, on December 16, 1910, filed in this court a petition, which, omitting the title and verification, reads as follows:

"Your petitioner, T. H. Simmons, represents and states to this Honorable Court that he is restrained of his liberty, and is unlawfully imprisoned and restrained at Tulsa, in the county of Tulsa, in the State of Oklahoma, by C. W. Conneely as chief of police of the City of Tulsa. The cause of said restraint, according to the best of the knowledge and belief of your petitioner, is as follows: On the 14th day of December, 1910, one Ben. F. Latham made complaint before C. A. Houston, as judge of the municipal court of the City of Tulsa, Oklahoma, charging your petitioner with the offense of violating section 1 of ordinance No. 756 of the City of Tulsa, Oklahoma. A certified copy of said complaint is filed herewith, attached hereto and made a part hereof, marked for identification 'Exhibit A'. A certified copy of said ordinance No. 756 of the City of Tulsa, Oklahoma, is attached hereto and made a part hereof, and filed herewith, marked for identification 'Exhibit B.' That said purported ordinance was passed and adopted by the board of commissioners of the city of Tulsa on the 26th day of July, 1910, and published as required by law in the issues of July 27th, 28th and 29th, 1910, in the Tulsa Daily Democrat; that on the 22d day of November, 1910, the board of

commissioners of the city of Tulsa, Oklahoma, passed and adopted a purported ordinance No. 822, which said purported ordinance was published in the Tulsa Daily Democrat as required by law in the issues of November 28th, 29th, 30th, 1910. A certified copy of said purported ordinance is attached hereto and made a part hereof, and marked for identification 'Exhibit C.'

"That the alleged violation of section 1 of ordinance No. 756 of the City of Tulsa is charged in said complaint to have been committed in the City of Tulsa, Oklahoma, on the 12th day of December, 1910; that on the 14th day of December, 1910, your petitioner was placed upon trial in the municipal court of the City of Tulsa, Oklahoma, and demurred to said complaint on various and sundry grounds, among which was that the said court had no jurisdiction to try your petitioner on said charge, and that the aforesaid ordinances of the City of Tulsa, Oklahoma, were void because the acts alleged to have constituted said offense are made a public offense under the statutes of the State of Oklahoma, and the Constitution of Oklahoma, and jurisdiction to try such offense conferred exclusively upon the county court of Tulsa County, Oklahoma, and because the board of commissioners of the city of Tulsa, Oklahoma, were without authority to pass, approve or adopt said ordinances, or either of them; that the municipal court aforesaid overruled said demurrer, and required your petitioner to go to trial in said court upon said complaint; that thereupon your petitioner demanded a trial by jury, and the said court refused your petitioner a jury trial on said charge; that thereupon a trial was had in said court upon said complaint, and your petitioner found guilty by the court, and his punishment fixed at a fine of $100.00 and ten days' imprisonment in the city jail of the city of Tulsa, Oklahoma, and the court ordered commitment to issue for your petitioner until said fine was paid and said imprisonment was satisfied. A certified copy of the docket entry on the records of said court is attached hereto, made a part hereof, marked for identification 'Exhibit D.' That your petitioner excepted to each and every ruling of the court at the time made; that thereupon the aforesaid C. A. Houston as judge of the municipal court of the City of Tulsa, Oklahoma, signed and issued a commitment for your petitioner in accordance with the aforesaid judgment. A certified copy of said commitment is attached hereto, made a part hereof, filed herewith, and marked for identification 'Exhibit E.' That at all times herein mentioned C. W. Conneely was chief of

police of the City of Tulsa, Oklahoma, and that said commitment was issued to C. W. Conneely as chief of police of the City of Tulsa, Oklahoma, and that your petitioner is now being held in custody in the city jail of the City of Tulsa, restrained of his liberty by the said Connelly under authority and by virtue of said commitment and the aforesaid proceeding.

"Your petitioner alleges that the municipal court of the City of Tulsa, Oklahoma, had no jurisdiction to try your petitioner on said charge; that the board of commissioners for the City of Tulsa, Oklahoma, had no authority to pass, approve or adopt said ordinances or either of them, and that the aforesaid proceedings in the municipal court of the city of Tulsa were illegal and void, and that the aforesaid restraint of your petitioner is illegal and unauthorized because of the aforesaid facts.

"Wherefore, your petitioner prays this Honorable Court to grant a writ of *habeas corpus,* and that he be discharged without delay from such unlawful imprisonment, and that, pending the hearing of the return of said writ, your petitioner be admitted to bail in an amount to be fixed by this court."

"EXHIBIT B.

"Published in the Tulsa Democrat July 27, 28, 29, 1910.

"Wm. Stryker, Publisher.

"ORDINANCE No. 756.

"An Ordinance Prohibiting Persons Having the Possession of Intoxicating Liquors with Intent to Barter, Sell, Give Away or Otherwise Furnish the Same Contrary to Law, Except as Hereinafter Provided, and Declaring an Emergency.

"Be it Ordained by the Board of Commissioners of the City of Tulsa, State of Oklahoma:

"Section 1. That it shall be unlawful for any person or persons to have in his, or their possession, or under his, or their, control any intoxicating liquors of any kind, including beer, ale and wine, within the City of Tulsa, with intent to barter, sell, give away or otherwise furnish the same contrary to law, except the same he held by such person, or persons, by virtue of an agency created and authorized by the Legislature to dispense such liquors for medicinal, mechanical, industrial and scientific purposes.

"Section 2. Any person, or persons, who shall violate any of the provisions of section one (1) of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction thereof

shall be punished by a fine of fifty ($50) dollars and imprisonment for a period of thirty (30) days for each offense.

"Section 3.    The payment of the special tax required of liquor dealers by the United States by any person within the said City of Tulsa, except local agents appointed and acting as provided by the Legislature, shall be *prima facie* evidence of his intention to violate the provisions of this ordinance.

"Section 4.    An emergency is hereby declared, by reason whereof it is necessary for the immediate preservation of the public peace, health and safety of the inhabitants of the City of Tulsa, that this ordinance shall take effect and be in full force from and after its passage and approval as required by law.

"Passed and approved this 26th day of July, 1910.

"Attest:                                    L. J. MARTIN, Mayor.

    "JOHN R. RAMSEY, City Atty.

"Approved:

    "E. B. CLINE, City Auditor."

"EXHIBIT C.

"Published in the Tulsa Daily Democrat Nov. 28, 29, and 30 1910.    Wm. Stryker, Publisher.

"ORDINANCE No. 822.

"An Ordinance amending Ordinance No. 756, entitled 'An Ordinance prohibiting persons having the possession of intoxicating liquors with intent to barter, sell, give away or otherwise furnish the same contrary to the law, except as hereinafter provided, and declaring an emergency,' and declaring an emergency.

"Be it Ordained by the Board of Commissioners of the City of Tulsa, Oklahoma:

"Section 1.    That section 2 of ordinance No. 756, entitled, 'An Ordinance prohibiting persons having the possession of liquors with intent to barter, sell, give away or otherwise furnish the same contrary to law, except as hereinafter provided, and declaring an emergency,' be and the same is hereby amended to read as follows, to wit:

"Any person who shall violate any of the provisions of section one (1) of this ordinance shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than five dollars ($5.00) nor more than one hundred dollars ($100.00) or by imprisonment in the city jail for not more than ninety (90) days or by both such fine and imprisonment.

"Section 2. That an emergency exists for the preservation of public health and safety, by reason whereof this ordinance shall take effect from and after its passage, approval and publication.

"Passed and approved this 22d day of November, 1910.

"Approved: "L. J. Martin, Mayor.

"John R. Ramsey, City Attorney,

"Attest:

"E. B. Cline, City Auditor."

And on said day a rule to show cause why said petitioner should not be discharged was made upon respondent Conneely, chief of police of the city of Tulsa, answerable December 19th. And it was ordered that, pending the determination of said cause, petitioner be admitted to bail in the sum of three hundred dollars. December 19th respondent filed a general demurrer to said petition. The case was thereupon argued and submitted, with five days to serve and file brief on the part of petitioner and five days additional to file brief on the part of respondent.

*Davidson & Malloy,* for petitioner.

*John R. Ramsey,* City Atty., and *C. A. Houston,* for respondent.

No briefs reached the reporter.

DOYLE, JUDGE. The petitioner was charged with having on December 10, 1910, violated ordinance number 756 of the city of Tulsa, by then and there unlawfully having in his possession intoxicating liquors with intent to barter, sell, give away and otherwise furnish the same contrary to the statute and said ordinance. Upon his arraignment in the municipal court of said city he filed a demurrer to said complaint, on the grounds that said municipal court had no jurisdiction to try petitioner on said charge, for the reason that the aforesaid ordinances of the city of Tulsa were void, because the acts alleged to have constituted said offense are made a public offense under the statutes and the Constitution of Oklahoma and jurisdiction to try such offense is conferred exclusively upon the county court of Tulsa county, wherefore the board of commissioners of the city of Tulsa were without authority to

pass, approve or adopt said ordinances or either of them. The demurrer was overruled by the court. Whereupon petitioner demanded a trial by jury, which demand was refused by the court. Thereupon the trial was had in said court upon said complaint, and petitioner was found guilty by the court and his punishment assessed at a fine of one hundred dollars and ten days' imprisonment in the city jail of the city of Tulsa.

The principal question presented for our consideration is: Has the board of commissioners of the city of Tulsa power to prohibit by ordinance the possession of intoxicating liquors within said city with intent to sell, barter, give away, or otherwise furnish the same contrary to law and to prescribe the punishment for a violation thereof?

The city of Tulsa is a city of the first class and is under a charter form of government, adopted under the authority and in pursuance to section 3, art. 18 of the Constitution, and this question must be determined upon a consideration of the powers granted under the constitutional provision, the statutes, and under its charter.

Section 3, art. 18 of the Constitution, provides that:

"Section 3. (a) Any city containing a population of more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this state, by causing a board of freeholders, composed of two from each ward, who shall be qualified electors of said city, to be elected by the qualified electors of said city, at any general or special election, whose duty it shall be, within ninety days' after such election, to prepare and propose a charter for such city, which shall be signed in duplicate by the members of such board or a majority of them, and returned, one copy of said charter to the chief executive officer of such city, and the other to the register of deeds of the county in which said city shall be situated. Such proposed charter shall then be published in one or more newspapers published and of general circulation within said city, for at least twenty-one days, if in a daily paper, or in three consecutive issues, if in a weekly paper, and the first publication shall be made within twenty days after completion of the charter; and within thirty days, and not earlier than twenty days after such publica-

tion, it shall be submitted to the qualified electors of said city at a general or special election, and if a majority of such qualified electors voting thereon shall ratify the same, it shall thereafter be submitted to the Governor for his approval, and the Governor shall approve the same if it shall not be in conflict with the Constitution and laws of this state. Upon such approval it shall become the organic law of such city and supersede any existing charter and all amendments thereof and all ordinances inconsistent with it. A copy of such charter, certified by the chief executive officer and authenticated by the seal of such city, setting forth the submission of such charter to the electors and its ratification by them shall, after the approval of such charter by the Governor, be made in duplicate and deposited, one in the office of the Secretary of State, and the other, after being recorded in the office of said register of deeds, shall be deposited in the archives of the city; and thereafter all courts shall take judicial notice of said charter. The charter so ratified may be amended by proposals therefor, submitted by the legislative authority of the city to the qualified electors thereof (or by petition as hereinafter provided) at a general or special election, and ratified by a majority of the qualified electors voting thereon, and approved by the Governor as herein provided for the approval of the charter."

Section 2 of article 2 of the charter of the city of Tulsa provides:

"The city of Tulsa shall have power to enact and to enforce ordinances necessary to protect health, life and property and to prevent and summarily abate and remove nuisances, and to preserve and enforce the good government, order and security of the city and the inhabitants of said city, and to enact and enforce any and all ordinances upon any subject; provided that no ordinance shall be enacted inconsistent either with the Constitution or law of the State of Oklahoma, or inconsistent with the provisions of this charter; and provided further, that the specifications of particular powers herein authorized shall never be construed as a limitation upon the general powers herein granted. it being intended by this charter to grant to and bestow upon the inhabitants of the city of Tulsa full power of self-government, and it shall have and exercise all powers of municipal government not prohibited to it by this charter or by some general law of the state of Oklahoma, or by the provisions of the Constitution of the State of Oklahoma."

And subdivision 3 of section 3 of article 2 of said charter in part provides:

"The city of Tulsa shall have power, by ordinance duly passed to prohibit dram shops, drinking saloons and other places where intoxicating liquors are sold."

Section 2 of art. 18 of the Constitution provides that:

"Every municipal corporation now existing within this state shall continue with all of its present rights and powers until otherwise provided by law, and shall always have the additional rights and powers conferred by this Constitution."

Section 683 of Snyder's St. provides:

"The city council shall have power to enact ordinances to restrain, prohibit and suppress tippling shops, billiard tables, bowling alleys, houses of prostitution and other disorderly houses, and practices, games and gambling houses, desecrations of the Sabbath day, commonly called Sunday, and all kinds of public indecencies.  *   *   *   "

Regarding the foregoing constitutional, statutory and charter provisions, counsel for petitioner contend and argue that:

"These are all general grants of powers for the general welfare of the city.  We contend that the power to adopt the ordinances in question cannot rest in these general grants of power. Municipal corporations under the usual grant of power, generally known as the general welfare clause, can not by ordinance declare those acts offenses against the city, which by the general statutes of the state are defined and made punishable as offenses against the state.  In other words, that in order to pass valid ordinances covering such offenses as are already covered by the state law, the city must have express power granted to it for that purpose by the Legislature, and that under the police power inherently vested in it, the city has no power to punish for an offense which is a crime against the state."—Citing numerous authorities from at least a dozen states.

The cases cited all maintain that under a general grant a city has no power by ordinance to punish for offenses provided for by the general laws of the state, and that such ordinances are absolutely void.  Upon this question there is a great and serious conflict in the authorities, and in one state the courts of last resort have disagreed.  (*Ex parte Combs,* 38 Tex. Cr. 648; *Harris Co.*

*v. Stewart,* 91 Tex. 133.) Under our Constitution and laws the doctrine of those cases have no application here. The foregoing provision of our Constitution contemplates the organization of municipal corporations, not by general or special legislative charter, but under a charter formulated and adopted by the citizens of the municipality. And when a city formulates and adopts a charter under the constitutional provision, the municipal corporation as organized may be considered a separate government, invested with full power of local legislation under its charter, the same being the organic law of the corporation.

A municipal corporation has been tersely defined to be: "The investing of the people of a place with the local government thereof." Judge Dillon says:

"We may therefore define a municipal corporation, in its historical and proper sense, to be the incorporation by the authority of the government of the inhabitants of a particular place or district and authorizing them in their corporate capacity to exercise subordinate specified powers of legislation and regulation with respect to their local and internal concerns. This power of local government is the distinctive purpose and the distinguishing feature of a municipal corporation proper." (Dill. Mun. Corp. par. 20.)

The general rule as to the powers possessed and which may be exercised, as defined by Judge Dillon, is:

"First, those granted in express words; second, those necessarily or fairly implied in, or incident to, the powers expressly granted; third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable." (*Ex parte Jones,* 4 Okla. Cr. 74, 109 Pac. 570.)

"When the state delegates to municipal corporations the powers of local self-government, it also delegates the power to pass all needful rules and regulations in the form of ordinances for this purpose. Charters generally contain specific enumerations of the subjects upon which the municipal corporation may legislate. This enumeration is usually followed by a general delegation of authority to pass all ordinances which may be necessary for the promotion of the police and sanitary affairs of the city, its good order, advancement of commerce and general wel-

fare of the locality, which shall be consistent with the Constitution and general laws of the state and local charter. This latter grant is generally, though not always, considered to give authority to enact ordinances upon all other subjects within the scope of municipal jurisdiction which are not mentioned in the specific enumeration. Of course, the passage of such ordinances must be reasonably necessary for the purpose of enabling the corporation to fulfill the objects of its creation. In other words, the detailed enumeration is not construed as denying the inherent power of the municipal corporation to make all proper or necessary ordinances respecting matters not specified, unless the intention to do so is clear. The limitation is that all such ordinances must be confined strictly to corporate or municipal purposes, and be in harmony with the charter, Constitution, general laws and public policy of the state." (McQuillin, Munic. Ordin. par. 50.)

"The proposition cannot be denied that organized government has the inherent right to protect health, life and limb, individual liberty of action, private property and legitimate use thereof, and provide generally for the safety and welfare of its people. Not only does the right exist, but this obligation is imposed upon those clothed with the sovereign power. This duty is sacred and cannot be evaded, shifted or bartered away without violating a public trust." (McQuillin, Munic. Ordin. par. 430.)

"The police regulations of municipal corporations are usually enforced by ordinance. What police powers the local corporation may exercise, and the manner in which they are to be enforced will depend upon its charter or legislative acts applicable, and the general policy of the state with respect thereto. Generally, cities may make and enforce within their limits all such local police, sanitary and other regulations designed to promote the health, safety, comfort, convenience and welfare of the local community which are not in conflict with Constitution or the general laws. Crowded urban populations require numerous police regulations which would be unreasonable in rural districts or sparsely populated territory. This difference was quickly recognized, and from the first establishment of local corporations, invested with civil government, the local community has been empowered to enact and enforce all sorts of such regulations which restrict more or less the liberty of the individual, his personal movements and the use of his property. These are absolutely essential to life in crowded centers. From the beginning their necessity has

been sanctioned by the public authorities and they have been sustained generally by the courts. The police power primarily inheres in the state, but if the state Constitution does not forbid, the Legislature may delegate a part of such power to the municipal corporations of the state, either in express terms or by implication." (McQuillin, Munic. Ordin. par. 433.)

As we construe the constitutional provision and the powers granted in the city charter, no power could be or has been conferred upon the board of commissioners of the city of Tulsa to enact or adopt ordinances for the punishment of offenses under the general laws of the state. The powers conferred by the charter are for municipal purposes only, and the object of the ordinance in question was not to punish an offense against the criminal laws of the state, but to provide a mere police regulation for the purpose of protecting the public peace, "and to preserve and enforce the good government, order and security of the city and the inhabitants of said city." The general law of the state which punishes this offense as a misdemeanor has not been superseded by the charter and ordinances of the city. The jurisdiction of the state to try the offense remains wholly unaffected and unimpaired. The general law and the local ordinances must stand together. The one is an offense against the state law, and the other a different petty offense against the city ordinance, and the two offenses being different, the offender may be proceeded against under either the city ordinances, the state law, or both. The one contemplates the preservation of the good government, order and security of the city; the other provides for the maintenance of the public peace and dignity of the state.

"Unless it is prohibited by some express constitutional or statutory provision, by the great weight of authority municipal corporations may, by ordinance, prohibit and punish acts which are also prohibited and punishable as misdemeanors under the general statutes of the state, or which may involve a common law offense; and while many such ordinances contain provisions for matters peculiar to communities of dense population, which are not noticed by the general law, many others are mere municipal repetitions or re-enactments of state statutes. The latter, after

4 Cr.—43

much strenuous contention, are now generally recognized as valid ordinances; although some cases declare them non-enforceable as being a secondary exercise of a sovereign power, which may not be employed by a municipality without express authority. Other cases favor the implication of police power in the municipality under authority to pass laws for the public peace, safety, etc., where the offense does not vitally affect the public interests, but specially concerns the municipal welfare." (28 Cyc. 697, and cases cited.)

Says Mr. Cooley:

"But in these cases the control of the state is not excluded if the Legislature afterward see fit to exercise it; nor will conferring a power upon a corporation to pass by-laws and impose penalties for the regulation of any specified subject necessarily supersede the state law on the same subject, but the state law and the by-law may both stand together if not inconsistent. Indeed, an act may be a penal offense under the laws of the state, and further penalties, under proper legislative authority, be imposed for its commission by municipal by-laws, and the enforcement of the one would not preclude the enforcement of the other." (Cooley's Constitutional Limitations [7th Ed.] 279, and cases cited.)

A few cases illustrative of this principle are as follows:

In *Mayor v. Rouse,* 8 Ala. 518, the court said:

"Such by-laws, though given the force of law by the charter, for the purpose of municipal government, yet relate to that solely, and prosecutions for mere violation have no reference, as a general rule, to the administration of criminal justice by the state."

In *Mayor, etc., of Mobile v. Allaire,* 14 Ala. 400, the validity of a municipal by-law, imposing a fine of fifty dollars for an assault and battery committed within the city, was brought in question. Collier, Ch. J., says:

"The object of the power conferred by the charter, and the purpose of the ordinance itself, was not to punish for an offense against the criminal justice of the county, but to provide a mere police regulation for the enforcement of good order and quiet within the limits of the corporation. So far as an offense has been committed against the public peace and morals, the corporate authorities have no power to inflict punishment, and we are not informed that they have attempted to arrogate it. It is al-

together immaterial whether the state tribunal has interfered and exercised its power in bringing the defendant before it to answer for the assault and battery; for whether he has there been punished or acquitted is alike unimportant. The offense against the corporation and the state, we have seen, are distinguishable and wholly disconnected, and the prosecution at the suit of each proceeds upon a different hypothesis; the one contemplates the observance of the peace and good order of the city; the other has a more enlarged object in view, the maintenance of the peace and dignity of the state."

In the case of *State v. Lee*, 29 Min. 445, 13 N. W. 913, it was held that an offense against a municipal by-law, proceeding from the same act which also constitutes a felony under the state law, is not, for that reason, to be considered the same offense. The two are distinct in their legal character, both as to the nature and quality of the offenses and the jurisdictions offended against. Quoting from the opinion:

"One who is within the limits of a municipal jurisdiction must not only obey the laws of the state, but must adjust his conduct to the requirements of local by-laws. An act which, outside a city, would subject him to punishment by the state only, committed inside its limits, by reason of the place and the consequent aggravation attending it, will render him liable also for the additional penalty. The same act prohibited by both the city and the state may thus constitute two offenses, which are intrinsically and legally distinguishable."

In the case of *McInerney v. City of Denver et al.*, 29 Pac. 517, Helm, Judge, used the following language:

"We encounter greater difficulty in disposing of the remaining general objection urged by counsel for petitioner, viz., that the ordinances through which petitioner's conviction took place are invalid, and therefore the police court is proceeding illegally. Great reliance is placed upon the proposition that since, by general statute, the act with which petitioner is charged is made a misdemeanor, punishable by indictment or information, trial by jury, etc., the ordinances involved are obnoxious to a number of constitutional provisions touching criminal cases. The Legislature may undoubtedly delegate to municipal corporations power to adopt and enforce by-laws or ordinances on matters of special

local importance, even though general statutes exist relating to the same subjects. An ordinance must be authorized, and must not be repugnant to a statute in force over the same territorial area; but if there be no other conflict between the provisions of the statute and ordinance, save that they deal with the same subject, both may be given effect. The resulting or correlative doctrine is now too firmly established to admit of serious question that the same act may constitute two offenses, viz., a crime against the public law of the state, and also a petty offense against a local municipal regulation. The weight of authority likewise fairly sustains the view that a prosecution and punishment for one of these offenses is no bar to a proceeding for the other, though if it be not so provided by statute, every fair minded judge will, when pronouncing judgment in the second prosecution or proceeding, consider a penalty already suffered. Since the act constitutes two distinct offenses against separate jurisdictions, it is analogous to those cases where the same act is punishable under a congressional statute, and also under a state law. The offenses being different, there is no violation of the constitutional inhibition against putting one twice in jeopardy for the same offense. These views have already, in substance, been sanctioned by this court, (*Hughes v. People,* 8 Colo. 536, 9 Pac. Rep. 50) and they are sustained by the following, among other, authorities: Cooley, Const. Lim. (5th Ed.) 241, 242 and note 1; Dill. Mun. Corp., par. 367, 368, and note 1; Bish. St. Crimes, par. 23; Whart. Crim. Pl. & Pr. 440; *State v. Lee,* 29 Minn. 453, 13 N. W. Rep. 913; *Waldo v. Wallace,* 12 Ind. 569; *State v. City of Topeka,* 36 Kan. 76, 12 Pac. Rep. 310; *Greenwood v. State,* 6 Baxt. 567; *Howe v. Treasurer,* 37 N. J. Law, 145; *Mayor, etc., v. Allaire,* 14 Ala. 400; *Hamilton v. State,* 3 Tex. App. 643; *Shafer v. Mumma,* 17 Md. 331; *State v. Sly,* 4 Or. 277; *Johnson v. State,* 59 Miss. 543; *Wragg v. Penn. Tp.* 94 Ill. 11; *McLaughlin v. Stephens,* 2 Cranch. C. C. 148; *City v. Cafferata,* 24 Mo. 96; *Rogers v. Jones,* 1 Wend. 238; *Cross v. North Carolina,* 132 U. S. 131, 10 Sup. Ct. Rep. 47."

Under the prohibition ordinances of the Constitution the minimum punishment for a violation of any of its provisions is by a fine not less than fifty dollars and by imprisonment not less than thirty days for each offense. The punishment fixed by stat-

ute for a violation of any of the provisions of the prohibition law is:

"A fine of not less than fifty dollars nor more than five hundred dollars, and by imprisonment for not less than thirty days, nor more than six months." (Sec. 4180, Snyder's St.)

The maximum punishment permitted for a violation of a police ordinance of a city of the first class is as follows:

"For any purpose, or purposes, mentioned in the preceding sections, the council shall have power to enact and make all necessary ordinances, rules and regulations, and they shall, also, have power to enact and make all such ordinances, by-laws, rules and regulations, not inconsistent with the laws of the state, as may be expedient for maintaining the peace, good government and welfare of the city, and its trade and commerce; and all ordinances may be enforced by prescribing and inflicting, upon inhabitants or other persons violating the same, such fine, not exceeding one hundred dollars, or such imprisonment, not exceeding three months, or both such fine and imprisonment, as may be just, for any offense, recoverable with costs of suit, together with judgment of imprisonment, until the fine and costs be paid or satisfied; and any person, committed for the non-payment of fine and costs, or either, while in custody, may be compelled to work on the streets, alleys, avenues, areas and public grounds of the city, under the direction of the street commissioner or other proper officer, and at such rate per day as the council may by ordinance prescribe, until such fine and costs are satisfied." (Sec. 701, Snyder's St.)

Thus we see that, if a prosecution under a municipal ordinance would be a bar to a prosecution for the same act as an offense under the general criminal laws of the state, in all cases in which a prosecution is first had under the municipal ordinance, the result would be a material abridgement of the punishment which the constitutional provision and the statute imposes, and in effect it would thus virtually repeal or modify the constitutional provision and the statute. As was said by Mitchell, Judge, in *State v. Lee, supra:*

"There are other considerations, founded on public policy and public necessity, which, although not controlling, are entitled to weight. The principle involved is far-reaching. There are many

things besides keeping houses of ill-fame which municpial cor-
porations are authorized to suppress by ordinance, which are
crimes under the general laws of the state. Now, if, on the one
hand, it be held that all such ordinances are void as repugnant to
the general statutes, and that a municipal corporation cannot
prohibit by ordinance any act which is a crime under such stat-
utes, the corporations would be shorn of many police powers
which they have always been supposed to possess, and which are
absolutely necessary to the preservation of good order within their
limits. On the other hand, if it be held that a so-called prose-
cution under a city or village ordinance is a bar to a prosecution
for the same act as a crime under the general criminal laws of
the state, it would virtually amount to a repeal *pro tanto* of these
general laws in every city, town and village in the state. Such a
sweeping abdication on the part of the state of her authority to
punish crime, in favor of the uncertain and variable ordinances
of every city and village, would be too alarming in its consequences
to be seriously entertained. It would result in the anomaly of the
same crime being liable to be punished in as many various ways
as there are cities and villages in the state, and of the same crimes
when committed within the limits of a city or village being pun-
ishable only by a petty fine, which if committed in the rural dis-
tricts of the state, would be punishable by imprisonment in the
state prison."

The prohibition ordinance of the Constitution and the stat-
utes prohibiting the manufacture, sale, barter, giving away and
otherwise furnishing of intoxicating liquors exemplify the public
policy of the state in relation to the traffic in intoxicating liquors,
and, in view of the public policy of the state, we believe that it
is a proper exercise of the police power of a municipal corpora-
tion to prohibit the sale and the unlawful possession of intoxi-
cating liquors within the confines of the corporation. Prohibit-
ing the possession of intoxicating liquors with intent to barter,
sell, give away and otherwise furnishing the same contrary to
law is so necessarily incidental and relevant to prohibiting "dram-
shops, drinking saloons, and other places where intoxicating
liquors are sold," and is so evidently a legitimate means to that
end as to render either argument or citation of authorities to
that effect superfluous, and the power so expressly granted nec-

essarily carries with it the power to prohibit the unlawful possession for the purpose of sale.

We are of opinion that the provisions of the charter of the city of Tulsa are broad enough to, and do, include the power to prohibit by ordinances the possession of intoxicating liquors within the confines of the corporation for the purpose of sale, barter, giving away and otherwise furnishing contrary to law—also power to enforce the punishment prescribed for violation thereof.

Counsel further contend that:

"The offense charged against petitioner is essentially criminal under the general laws of the state, and petitioner is entitled to a jury trial. The fact that an appeal lies to a court in which a jury trial may be had, does not meet the requirements of the Constitution."—Citing the case of *Callan v. Wilson*, 127 U. S. 540, 32 L. Ed. 223.

This important question is now for the first time presented for determination by this court. Section 19 of the Bill of Rights provides that:

"The right of trial by jury shall be and remain inviolate."

Section 20 of the Bill of Rights provides that:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed."

A careful examination of the authorities leads us to the conclusion that prosecutions for violations of municipal ordinances, enacted under the police power for the preservation of peace, good order, safety and health and otherwise promoting the general welfare within cities, have been generally without the intervention of a jury, at least in the first instance.

Judge Dillon says:

"On of the question which most frequently arises is whether the defendant is entitled to a trial by jury, and the cases on this subject cannot all be reconciled. The general principles applicable to its solution, however, are plain. Violations of municipal by-laws proper, such as fall within the description of municipal police regulations, as, for example, those concerning markets, streets, water-works, city officers, etc., and which relate to acts and omis-

sions that are not embraced in the general criminal legislation of the state, the Legislature may authorize to be prosecuted, in a summary manner, by and in the name of the corporation, and need not provide for a trial by jury. Such acts and omissions are not crimes or misdemeanors to which the constitutional rights of trial by jury extend."

And again:

"Where the act or omission sought to be punished by imprisonment under a municipal ordinance is in its nature not peculiarly an offense against the municipality, but rather against the public at large, where it falls within the legal or common-law notion of a crime or misdemeanor, and especially where, being of such a nature, it is embraced in the criminal code of the state, there the constitutional guaranties intended to secure the liberty of the citizen, and the right to a trial by jury cannot be evaded by the nature of the powers rested in the municipal corporation or the nature of the jurisdiction conferred upon the municipal courts." (1 Dill. Mun. Corp. [3d Ed.] para. 433.)

"It has been held sometimes that under Constitutions summary proceedings of this kind can be employed only in the trial of such offenses as are 'not embraced in the public criminal statutes of the state,' and that where the act charged constitutes an offense against the criminal law of the state, a person charged with such act cannot be tried by a municipal court without a jury, even though such act may be a violation of an ordinance of the municipality. This view seems based on the idea that otherwise a person might be liable to be tried and punished twice for the same offense. But this reason can have no force in those states where the same act may constitute an offense against both the state and the municipal corporation, and both offenses be punished without violating any constitutional principle. In the courts where this view is held it has been denied that the test is whether the act prohibited by ordinance is embraced in and made indictable by the criminal code of the state, and the true criterion declared to be rather whether it may not be an act not only against the peace and dignity of the state, but also subversive of, or dangerous to, the peace, good order, safety, or health of the municipality." (A. & E. Enc. of Law, vol. 27, p. 376.)

As we construe these constitutional provisions the first means that a jury trial is preserved in all cases in which it existed at

the time of the adoption of the state Constitution. It does not extend the right of trial by jury; it simply secures it in all cases in which it was a matter of right before. The second secures to the accused in all criminal prosecutions the right of trial by a jury of the county. A prosecution for the violation of a municipal ordinance which prohibits an act which also constitutes an offense under the general criminal law is a quasi criminal proceeding. At the time the state Constitution was adopted the laws in force in the territory of Oklahoma provided two modes of appeal from police courts. These provisions were as follows:

"That from any final judgment of the justice of the peace or the police judge the defendant may appeal to the probate court of the county, upon filing, within ten days from the date of the judgment, a good and sufficient bond in double the amount of the fine and costs, signed by two or more sureties to be approved by the justice of the peace, conditioned that the appellant will appear before the probate court of the next regular term thereof, and will pay and satisfy any fine and all costs that may be rendered against him in the probate court, and that he will submit himself for imprisonment if imprisonment be adjudged against him, and will obey all orders and judgments of the probate court in the disposition of the appeal; Provided, however the judgment of the probate court shall be final, unless the defendant desires to appeal on questions of law alone, then an appeal may be taken to the district court of the county as herein provided, substituting in the new bond the district court in place of the probate court. Upon the filing of said bond, either in the justice of the peace or the probate court, the defendant must be given his liberty. Provided, further, if the defendant desires to appeal without giving bond as herein provided, he must be confined in jail until the appeal is disposed of; and if the defendant remain in jail before the appeal is disposed of long enough to liquidate the fine and costs of the court below, at the rate of two dollars per day, then he must be discharged and no further prosecution shall be had in the case." (Sec. 1, ch. 29, Session Laws of 1905, sec. 7195, Snyder's St.)

"In all cases before the police judge arising under the ordinances of the city, an appeal may be taken by the defendant to the district court, but no such appeal shall be allowed unless the defendant, within ten days, shall enter into a recognizance with

good and sufficient sureties, to be approved by the police judge, conditioned for the personal appearance of the appellant before the district court of the county on the first day of the next term thereof." ( Sec. 432, Wilson's St., sec 746, Snyder's St.)

The first provision evidently was intended to provide a mode of appeal from justices of the peace or police judges in cities, towns and villages organized under the provisions of chapter 15, Snyder's Statutes. The second provision secures to the accused an unqualified right of appeal to a court in which he may have a trial by jury, requiring only a sufficient recognizance, conditioned for the personal appearance of the appellant before the appellate court on the first day of the next term thereof.

It is provided in section 10, article 7 of the Constitution, that:

"The district court shall have such appellate jurisdiction as may be provided in this Constitution, or by law."

By act of June 4, 1908, (Sec. 1979, Snyder's St.) it is provided that:

"The county court shall have, concurrent with the district court, appellate jurisdiction of judgments of justices of the peace and of judgments of police judges in all civil and criminal causes."

The constitutional provisions simply secure the right to a trial by jury without directing the mode or manner in which it shall be enjoyed, and it is the province of the Legislature to enact laws regulating the mode in which the rights secured to the citizen by the Constitution shall be enjoyed.

A similar provision was construed in the case of the *City of Emporia v. Volmer,* 12 Kan. 622, wherein Judge Brewer used this language:

"The statute plainly authorizes such summary proceeding in the police court. And the only question that can be raised is, whether such section conflicts with the provision in paragraph 5 of the Bill of Rights, which declares that 'the right of trial by jury shall be inviolate.' Without attempting to decide as to the extent or limits of this constitutional provision, it is enough for us in this case to decide that, where the summary proceeding, authorized by statute, is in a municipal court, for the violation of one of the city ordinances, and the defendant may have an appeal, clogged

by no unreasonable restrictions, to an appellate court in which he has a right to a trial by jury, this is sufficient."—Citing *Byers v. Commonwealth,* 42 Penn. St. 89; *McGear v. Woodruff,* 33 N. J. Law, 213.

In the case of *Jones v. Robbins,* 8 Gray, 329, it was said:

"And we believe it has been generally understood and practiced here and in Maine, and perhaps in other states having a similar provision, that as the object of the clause is to secure a benefit to the accused, which he may avail himself of or waive, at his own election; and as the purpose of the provision is to secure the right, without directing the mode in which it shall be enjoyed; it is not violated by an act of legislation, which authorizes a single magistrate to try and pass sentence, provided the act contains a provision that the party shall have an unqualified and unfettered right of appeal, and a trial by jury in the appellate court, subject only to the common liability to give bail, or to be committed to jail, to ensure his appearance and to abide the judgment of the court appealed to. This is a necessary inconvenience, as is also the delay of the trial till the sitting of such court; they are the same and no greater than they would be in case the magistrate, instead of passing sentence, should, on examination, bind the accused over, or, as the necessary alternative, commit him to jail. Such seems to have been the construction of a similar provision in other states. *Emerick v. Harris,* 1 Binn. 416; *Murphy v. People,* 2 Cros. 815; *Jackson v. Wood,* 2 Conn. 819; *Beers v. Beers,* 4 Conn. 535; *Sullivan v. Adams,* 3 Gray, 477. It appears to us, therefore, that such a provision is not void, as a violation of that clause, which, in criminal cases, secures to the accused a right of trial by jury."

These provisions undoubtedly secure the right of appeal without unreasonable restrictions from the municipal court of the city and a trial by jury in the appellate court. Our conclusion is that the defendant's constitutional guaranty of a trial by jury has not been impaired.

It is also contended that as the case was prosecuted in the name of the city of Tulsa, it was in violation of sec. 19, art. 7 of the Constitution, which provides:

"The style of all writs and processes shall be 'The State of

Oklahoma.' All prosecutions shall be carried on in the name and by the authority of the State of Oklahoma."

The charter of the city of Tulsa provides (Sec. 14, art. 11):

"All writs, subpoenas, or other process issuing out of the city court, shall run in the name of the city of Tulsa, and may be executed and served by the chief of police or his deputies, or policemen of said city anywhere in Tulsa county, Oklahoma."

We are of opinion that the constitutional provision does not extend to prosecutions for violation of city ordinances, and that this provision of the city charter is not in conflict with the constitutional provision.

The Constitution of the state of Iowa contains a similar provision. The charter of the city of Davenport authorizes prosecutions for violations of ordinances to be instituted in the name of the city, and it was contended that this portion of the charter was in conflict with the Constitution. In the case of *Davenport v. Bird.* 34 Iowa, 524, it was held otherwise. Miller, Judge, delivering the opinion of the court, says:

"Is it necessary, under the Constitution, that all prosecutions for violations of municipal police ordinances shall be conducted in the name and by the authority of the state of Iowa? Or, in other words, is that clause of the city charter of Davenport, which directs that 'all suits, actions, and prosecutions be instituted, commenced, and prosecuted in the name of the city of Davenport,' in conflict with the constitutional provision before referred to? We are of the opinion that it is not. This clause of the Constitution occurs in article 5, which treats of the judicial department of the government. This article vests and defines the judicial power of the state, establishes the tenure of office of the judges, and defines the mode of their election; fixes their salary and limits the number of judicial districts; provides for the election of an Attorney General, and other matters pertaining to the judicial arm of the state, among which is the clause under consideration. From all this it seems manifest that the requirement 'that all prosecutions shall be conducted in the name of the state of Iowa,' contemplates such criminal prosecutions as shall be instituted and prosecuted before the tribunals which are provided for in that article of the Constitution under the statutes of the state. It is fitting and appropriate that prosecutions for violations of the criminal laws of

the state should be carried on in the name of the government. But there is no fitness or propriety in requiring the state to be a party to every petty prosecution under the police regulations of a municipal corporation. Such a construction of this article of the Constitution seems to us to be unwarranted, and not intended by the framers of the Constitution. It was held by the Supreme Court of Pennsylvania that the word 'process,' in the twelfth section of the fifth article of the Constitution of the state, which provides that 'the style of all process shall be the commonwealth of Pennsylvania,' was intended to refer to such writs only as should become necessary to be issued in the course of the exercise of that judicial power which is established and provided for in the article of the Constitution, and forms exclusively the subject-matter of it. On the same principle we are of the opinion that the word 'prosecution,' in the eighth section of article 5 of our Constitution, was intended to refer only to such criminal prosecutions under state laws as should be cognizable by the judicial power, which is established and provided for in that article, and that it was not intended to include prosecutions under ordinances of municipal corporations cognizable before police magistrates."

See, also, *People v. Justices,* 74 N. Y. 406; *Williams v. Augusta,* 4 Ga. 509; *Ex parte Hollwedell,* 74 Mo. 395; *Williams v. Comm.,* 4 B. Mon. (Ky.) 156; *Seattle v. Chin Let,* 19 Wash. 38, 52 Pac. 324; *Abbeville v. Leopard,* 61 S. C. 99, 39 S. E. 248; *Plateville v. McKerman,* 54 Wis. 487.

For the reasons stated, we conclude that the municipal court of the city of Tulsa had jurisdiction of the subject-matter and petitioner, and that petitioner's imprisonment is not illegal.

The writ of *habeas corpus* is denied, and petitioner is remanded to the custody of the chief of police of the city of Tulsa.

FURMAN, PRESIDING JUDGE, and RICHARDSON, JUDGE, concur.