## *Ex parte* T. H. SIMMONS.

No. A-975.   Opinion Filed April 28, 1911.

(115 Pac. 380.)

1. **MUNICIPAL CORPORATIONS—Powers—Police Regulations.** An express grant of power contained in a charter of a municipal corporation authorizes such corporation to enact any ordinances relating to police regulations which are clearly within the power so granted, and which will aid and assist in the accomplishment of the purposes for which such express grant of power was made.

2. **SAME.** A municipal corporation may exercise the powers with reference to police regulations which are necessarily or fairly implied in, or are incidental to, the powers expressly granted in its charter.

3. **SAME.** A municipal corporation can exercise any powers of police regulations which are necessarily essential to the declared objects and purposes of the corporation, and which are not prohibited by some statute or constitutional provision.

4. **INTOXICATING LIQUORS—Police Regulations—Powers of Cities.** The adoption of the prohibition ordinance by the people of this state and the enactment of the prohibition law by the Legislature does not prevent cities of the first class from enacting ordinances as police regulations, prohibiting the sale of intoxicating liquors, or having such liquors in one's possession, with the intention of selling the same within the limits of such city.

5. **CRIMINAL LAW—Nature of Crime—Offenses Against State and Municipality.** The same act may constitute an offense against the state law and a violation of a city ordinance, and, the two offenses being different, any person committing such act may be proceeded against under either the city ordinance or the state law, or both.

6. **CRIMINAL LAW—Nature of Offense—Different Offenses in Same Transaction.** One act may constitute two or more separate and

distinct offenses, and may be subject to two or more separate and distinct penalties, and a prosecution and conviction for one of these offenses will be no bar to a prosecution and conviction for the others.

7. JURY—Violations of Ordinance—Prosecution. Violations of a city ordinance, such as fall within the description of municipal police regulations, may be prosecuted in a summary manner by and in the name of the city, and without trial by jury.

8. CONSTITUTIONAL LAW—First Ten Amendments to United States Constitution—Applicable to What Jurisdiction. The first 10 amendments to the Constitution of the United States are not applicable to state governments in their operations upon the people within their borders, but they are restrictions on the exercise of power by the United States government.

(Syllabus by the Court.)

On motion for rehearing. Motion denied.

For former opinion, see 4 Okla. Cr. 662, 112 Pac. 951.

FURMAN, PRESIDING JUDGE. It is earnestly contended by the attorneys for the petitioner that the original opinion of this court, published in 4 Okla. Cr. 662, 112 Pac. 951, is in conflict with the statutes and Constitution of Oklahoma and with controlling decisions, but of what courts they do not say.

But two propositions are presented in their petition for a rehearing and in the brief filed in support thereof. The first is that the charter of the city of Tulsa does not expressly grant the power to prohibit within said city the unlawful possession of liquor for the purpose of sale. The second is that the petitioner was entitled to a trial by jury in the municipal court in the city of Tulsa. As all of the questions involved in this case are of great importance and are of first impression in this court, we have decided to re-examine and go over again the entire ground covered by our former decision. In fact, the two questions presented in the petition for a rehearing are so intimately and directly connected with, and necessarily incidental to, the ground upon which the entire decision rests that we could not consider them properly without again going over the entire case.

The charter of the city of Tulsa is not a delegation of law-

making authority from the Legislature of the state, as the charters of cities in other states usually are. This fact is important and should be constantly borne in mind when we attempt to apply the decisions of other states to municipal corporations in this state. The charter of the city of Tulsa was adopted by the people of Tulsa under and by virtue of authority, and in pursuance of, section 3, art. 18, of the Constitution of this state. For this constitutional provision in full, see *Simmons v. State*, 4 Okla. Cr. 668, 112 Pac. 951. Under the express terms of the Constitution, when this charter was approved by the Governor, it became the organic law of the city of Tulsa. The Constitution of the state has clothed the city of Tulsa with full powers of municipal government and local legislation. The city of Tulsa is not exercising legislative powers delegated to it by some other legislative body; but it derives all of its powers by grant of authority directly from the sovereignty itself. It stands, therefore, upon a very different footing from those municipalities which possess only a delegation of delegated power. This is a part of the general theory upon which the entire government, state, county, and municipal, of Oklahoma is based, and that is the absolute sovereignty of the people and their capacity for self-government. Section 2, art. 2, of the charter of the city of Tulsa, among other things, provides:

"That the specifications of particular powers herein authorized shall never be construed as a limitation upon the general powers herein granted, it being intended by this charter to grant to and bestow upon the inhabitants of the city of Tulsa full power of self-government, and it shall have and exercise all powers of municipal government not prohibited to it by this charter or by some general law of the state of Oklahoma, or by the provisions of the Constitution of the state of Oklahoma."

Counsel for petitioner make no attempt to show wherein this provision is in conflict with the Constitution or statutes of this state.

Subdivision 3 of section 2 of said charter, in part, provides:

"The city of Tulsa shall have power, by ordinance duly passed

5 Cr.—26

to prohibit dramshops, drinking saloons and other places where intoxicating liquors are sold."

No effort has been made to show that this is in conflict with the Constitution or laws of the state. The express declaration contained in the charter, granting to the city of Tulsa authority to exercise all powers of a municipal government, not prohibited to it by the Constitution or by provisions of the statutes of Oklahoma, was doubtless inserted for the purpose of giving the city full power of municipal self-government and authority to legislate for all local purposes, in the event it should be found that the specifications of particular powers granted did not include some necessary powers of municipal self-government.

Counsel for petitioner, in their brief, say:

"Subdivision 3 of article 2 of the charter of Tulsa, Oklahoma, expressly grants the power 'to prohibit dramshops, drinking saloons and other places where intoxicating liquors are sold,' but this is not an express grant of power to prohibit the unlawful possession of liquor for the purpose of sale."

This is equivalent to assuming the position that a municipal corporation in Oklahoma, organized by virtue of our Constitution, cannot enact an ordinance upon any subject, unless the charter of such corporation, by express grant of power, authorizes the city to adopt such ordinance. Counsel fail, however, to cite any authorities or to make any argument in support of this position. They have assumed the proposition in controversy and have substituted assertion for authority and argument. If a city could not adopt an ordinance, unless authorized to do so by express grant of power, the very purposes of municipal government would be defeated, for no one could foresee and anticipate, and no charter could provide for, every ordinance which might become necessary on account of the exigencies of municipal government. If counsel had said that a municipal corporation could not adopt an ordinance, unless its charter clearly granted the power to do so, then they would have been more nearly correct; but in making this statement they would have taken their case out of court, because

no one could maintain a dramshop, drinking saloon, or other place where intoxicating liquors are sold, unless he also has in his possession intoxicating liquors for the purpose of selling the same. To prohibit the possession of such liquors for the purpose of sale is the most effective means of prohibiting and suppressing dramshops, drinking saloons, and other places where intoxicating liquors are sold. It goes directly to the root of the evil, and is necessarily involved in the express grant of power contained in the charter of the city of Tulsa, and is therefore clearly granted by such charter. An express grant of power to do a certain thing clearly and necessarily carries with it the grant of power to do all other things which are included in such express grant of power, and which will aid and assist in the accomplishment of the purpose for which the express grant of power was made. This, to our minds, is the only tenable position to assume upon this question.

This court is irrevocably committed to the position that the common-law doctrine of a strict construction of penal statutes has no place in the criminal jurisprudence of Oklahoma. We propose to construe all statutes, charters, and ordinances liberally, to effect the purposes for which they were adopted or enacted, and in furtherance of justice; and whenever we can reasonably do so we will give them that construction which will enable them to reach and destroy the evils at which they are aimed. We are fully determined that, so far as criminal cases are concerned, the courts of Oklahoma shall be courts of justice, as well as courts of law. We will not allow any finespun, artificial distinctions to defeat the enforcement of law. The discovery of the truth, the enforcement of law, and the maintenance of justice should be and are paramount considerations in the decision of every case.

Counsel for petitioner, in their motion for a rehearing and brief supporting such motion, occupy what appears to us to be an utterly indefensible position. They practically concede that the municipal corporation of Tulsa may rightfully prohibit dramshops, drinking saloons, and other places where intoxicating liquors are sold, although these acts are punishable by the state laws, because

the charter by express grant of power authorizes them to do so; But they insist that said city cannot pass a valid ordinance, prohibiting the unlawful possession of intoxicating liquors, with the intention of selling the same, upon the ground that this is an offense against the state laws, and that the charter does not contain an express grant of power for this purpose, notwithstanding the fact that such power is necessarily implied in the express grant of power conferred. In their brief they say:

"The overwhelming weight of authority which is supported by the sounder reasoning is to the effect that a municipal corporation has not the power to pass valid ordinances covering offenses under the state law, unless the power to do so has been expressly granted to it for that purpose."

We regret that counsel did not favor us in their brief with some of the "sounder reasoning" referred to. They did, however, cite a number of authorities as supporting their contention. We have carefully examined each of these citations, and, while some of them might be construed to sustain the assumption of counsel for petitioner, yet we are unable to accept the conclusion that the weight of authority sustains their contention.

In their brief counsel first cite 1 Dillon on Municipal Corporations (4th Ed.) § 368, the second section of which paragraph is as follows:

"Where the act is, in its nature, one which constitutes two offenses, one against the state and one against the municipal government, the latter may be constitutionally authorized to punish it, though it be also an offense under the state law; but the legislative intention that this may be done ought to be manifest and unmistakable, or the power in the corporation should be held not to exist."

This must be read in connection with section 89 of the same volume, when we will see what the author meant by the words "manifest and unmistakable." Section 89 is as follows:

"It is a general and undisputed proposition of law that a *municipal corporation possesses and can exercise the following powers, and no others:* First, those granted in *express words;* second, those *necessarily or fairly implied* in or *incident to* the powers

expressly granted; third, those *essential* to the declared objects and purposes of the corporation, not simply convenient, but indispensable."

Here we find the statement is explicitly made that a municipal corporation can exercise any power necessarily or fairly implied in or incident to the powers expressly granted. So it is seen that the first authority cited by counsel for petitioner in express terms denies the proposition that a corporation can only exercise those powers which are granted in its charter in express words. On the contrary, it announces the doctrine that a municipal corporation can exercise any power necessarily or fairly implied in or incident to the powers expressly granted in the charter. This is our position exactly. Several pages of authorities are cited in the notes as sustaining this position.

The next authority cited by counsel for petitioner is Beach on Public Corporations, § 317, which is as follows:

"The canons of construction that are employed in the interpretation of statutes are also used to determine the meaning of ordinances. Provisions that are essentially penal are strictly construed, but ordinary police regulations, even though a penalty be attached, are not subjected to so close a scrutiny. It is proper to consider the title of the ordinance and the mischief which it was designed to remedy, as also, in doubtful cases, a contemporaneous construction by the parties interested. General words and sweeping clauses are controlled by particular descriptions preceding them. If an ordinance is susceptible of two constructions, that one must prevail which will preserve its validity in preference to a construction that will render it invalid; and this must be done, although the construction adopted may not be the most obvious or natural, or the literal, one. Thus an ordinance making it unlawful to ride a bicycle across a public bridge is limited to the footways of the bridge; otherwise it would be void as against common right. And an ordinance providing that 'no person shall drive or lead any horse or cart or wheel carriage on the footway or sidewalk of any street' does not prohibit the carting of earth from excavations across the sidewalk."

We fail to find here any support of the assertion of counsel

for petitioner. In this connection we desire to call attention to the following language used by the same author in section 510:

"It is the opinion of Judge Cooley that the clear weight of authority is to the effect that an act may be a penal offense under the laws of the state, and that further penalties, under proper legislative authority, may be imposed for its commission by municipal by-laws, and the enforcement of the one would not preclude the enforcement of the other. The arguments of those who hold that municipal ordinances may impose further penalties for the commission of acts already penal offenses under the general statutes are set forth by Collier, C. J., in an Alabama case cited by Judge Cooley, where a city ordinance imposed a fine for assault and battery committed within the city limits, and its validity was questioned. He said: 'The object of the power conferred by the charter and the purpose of the ordinance itself was not to punish for an offense against the criminal justice of the country, but to provide a mere police regulation for the enforcement of good order and quiet within the limits of the corporation. So far as an offense has been committed against the public peace and morals, the corporate authorities have no power to inflict punishment, and we are not informed that they have attempted to arrogate it. It is altogether immaterial whether the state tribunal has interfered and exercised its powers in bringing the defendant before it to answer for the assault and battery; for whether he has thus been punished or acquitted is alike unimportant. The offense against the corporation and the state, we have seen, are distinguishable and wholly disconnected, and the prosecution at the suit of each proceeds upon a different hypothesis. The one contemplates the observance of the peace and good order of the city; the other has a more enlarged object in view—the maintenance of the peace and dignity of the state.' There are many cases upholding the propositions set forth in the last-cited authority; indeed, the number of American cases supporting this view far exceeds the number of the cases which hold the contrary. Thus it has recently been decided in New Jersey that certain acts which are indictable as offenses against the state may also be by the Legislature constituted offenses against the police regulations of municipalities, so as to subject the offender to the mode of trial incident to proceedings for the violation of ordinances, and that, where in such cases the Legislature has not made special provision for a trial by jury; it cannot be demanded as matter of right.

Conformably to these views it was held in Missouri that, although by the state statutes it was a misdemeanor to cruelly beat any domestic animal, municipal corporations might prohibit the same act by ordinance and punish offenders. And in Arkansas, although carrying concealed weapons, disturbing the peace, and selling liquor on Sunday are each made offenses by statutes, the power to prohibit the same acts was considered to be given cities and towns by the statutes authorizing the passage of ordinances, not inconsistent with the laws of the state, to suppress disorderly conduct, provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of the corporation and its inhabitants. Likewise in Indiana the statute which prohibited towns or cities from making acts punishable by ordinance, which are made public offenses and punishable by the state, did not, it was held, apply to an ordinance making it an offense to sell intoxicating liquors within the limits of the city without first obtaining a city license, on the ground, however, that such act was not an offense against the state law."

So it is seen that the second authority cited by counsel for petitioner does not overwhelmingly sustain their contention that a municipal corporation can only prohibit those acts which are violations of the state laws when this authority is conferred by an express grant of power in its charter, and, that, on the contrary, it sustains the position assumed by this court in its original opinion.

Counsel for petitioner next cite 28 Cyc. On page 692 of that volume, under the title of Police Power and Regulations, we find the following:

"The police power of the state, being an expression of the instinct of self-preservation and protection characteristic of every living creature, is an inherent faculty and function of life, attributed to all self-governing bodies as indispensable to their healthy existence and to the public welfare. It embraces all rules and regulations for the protection of the lives, limbs, health, comfort, and quiet of persons, and the preservation and security of property. The municipality, as a governmental agency, must, of course, have such measure of the power as is necessary to enable it to perform its governmental functions; and also those municipal functions which are 'necessarily and inseparably incident' to its existence as a corporation. The power is usually conferred on

municipalities in express terms of Constitution or statute; and unless otherwise expressed it is always construed as limited to corporate boundaries, and consistent with general statutes and the Constitution, both federal and state. The municipality is thus restrained from entering the field of general legislation, or making declaration of public policy, and limited in the exercise of the power to matters local and municipal.

"After repeated challenge of municipal authority to exercise the police power, on the ground that it is a sovereign power and therefore nondelegable, the doctrine is firmly established and now well recognized that the Legislature may expressly or by implication delegate to municipal corporations the lawful exercise of police power within their boundaries; the measure of power thus conferred is subject to the legislative discretion. It may be full or partial, regular or summary; but it is never exclusive, as the Legislature has no authority to divest itself of any of its sovereign functions or powers. In the absence, however, of an express delegation, or of a necessary conferment resulting from some inherent or given express power, the municipality cannot lawfully act.

"'Potestas delegata non est delegari,' is a general maxim applicable with peculiar force to any form of sovereign power, and operates to prevent the governing body of a municipal corporation, intrusted by the state with the police power, from delegating its high functions to any other body or officer—even to the mayor or other member of the body; the trust is official and personal, and may be discharged only by those to whom the state commits it. But this doctrine is not so construed and applied as to require the entire council to engage personally in every step necessary for the exercise of the functions; they may fully discharge their official duty and exhaust the municipal discretion by enacting by-laws or ordinances to be executed by the proper board or officer. And it seems that under express statutory authority they may delegate a portion of their discretion to the mayor or other officer, or in some cases, even without this express permission, sustain such delegation.

"As the state may not, by any law or contract, surrender or restrict any portion of the sovereignty which it holds in sacred trust for the public weal, so a municipality, as a governmental agency, acting and bound always to act as trustee of the powers delegated to it, may not, by contract, license, or by-law, surrender or restrict any portion of the police power conferred upon it.

"Where the power is conferred on a municipal corporation to license any calling or business, it cannot delegate such power to any person or authority. Nor can the municipal council, where the power to license is given by statute directly to it, delegate such power to any city official. But the common council, where the city charter so authorizes, may delegate the power to license to the mayor.

"The Legislature may confer police power upon a municipality over subjects within the provisions of existing state laws. Accordingly, unless it is prohibited by some express constitutional or statutory provision, by the great weight of authority municipal corporations may, by ordinance, prohibit and punish acts which are also prohibited and punishable as misdemeanors under the general statutes of the state, or which may involve a common-law offense; and while many such ordinances contain provisions for matters peculiar to communities of dense population, which are not noticed by the general laws, many others are mere municipal repetitions or re-enactments of state statutes. The latter, after much strenuous contention, are now generally recognized as valid ordinances, although some cases declare them nonenforceable, as being a secondary exercise of a sovereign power, which may not be employed by a municipality without express authority. Other cases favor the implication of police power in the municipality under authority to pass laws for the public peace, safety, etc., where the offense does not vitally affect the public interests, but specially concerns the municipal welfare.

"When the same act is made an offense both by statute and ordinance, it has been held that it contravenes the constitutional provision against putting a citizen twice in jeopardy for the same act to prosecute and punish the offender under both laws, and that a conviction under either may be pleaded in bar of prosecution under the other; but the weight of authority would seem to be opposed to this holding, upon the rather specious distinction that one prosecution is for violation of the state law, and the other for breach of the municipal ordinance and only quasi criminal.

"Such ordinances must not directly or indirectly contravene the general law. Hence ordinances which assume directly or indirectly to permit acts or occupations which the state statutes prohibit, or to prohibit acts permitted by statute or Constitution, are,

under the familiar rule for validity of ordinances, uniformly declared to be null and void. Additional regulation by the ordinance does not render it void. And the rule of construction, 'Ut res magis valeat quam pereat,' is uniformly applied by the courts to sustain, as being consistent with the general laws and Constitution, such wholesome by-laws enacted to suppress disorderly conduct, provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of the municipality. In many instances, however, such valid by-laws have been held to be repealed by implication by subsequent statutes, indicating an intention to withdraw the municipal authority; but other cases indicate a contrary inclination."

So it is seen that the Cyclopedia of Law and Procedure does not overwhelmingly sustain the contention of counsel for the petitioner.

Counsel next cite *In re Ridenbaugh*, 5 Idaho, 371, 49 Pac. 12, Ridenbaugh was prosecuted in the state court for the crime of conducting a gambling game of faro in Boise City. Upon the trial of the cause, the defendant offered in evidence the following license:

"Boise City License. No. 225. Granted May 8, 1897, State of Idaho. Expires Aug. 7, 1897. This license is granted to Thomas Constance for faro, in Boise City, Ada county, state of Idaho, having paid the city clerk the sum of fifty dollars for one-quarter thereof, conformably with the laws of said state and ordinance No. 155 of Boise City, passed and approved January 7, 1895. [Signed] H. E. Bral, City Treasurer. [Countersigned] Arch Cunningham, City Clerk."

The court rejected the offered evidence as immaterial and as not affording justification. The defendant then offered in evidence an ordinance of said city which licensed banking games with cards within the corporate limits of said city. This proffered evidence was also rejected by the court. The defendant being convicted, the case was carried before the Supreme Court of the state upon a writ of *habeas corpus;* the petitioner contending that under the statutes of Idaho the common council of Boise City had full power and authority to regulate and restrain in their discretion, and to license and tax, gambling and gaming houses.

The Supreme Court held that the act making it an offense to conduct a gambling house in the state of Idaho expressly repealed that section of the statutes authorizing Boise City to license gambling. That any other construction would make gambling lawful in Boise City, while it would be a misdemeanor in any other part of the state. The court then proceeded as follows:

"The cardinal rule in construing constitutional, as well as statutory, provisions, is to discover and enforce the intention of those who made them. Said provisions of the Constitution, as well as the provisions of the original charter of Boise City, and as amended, are too plain to require construction. It was not the intention to permit or authorize the councils of incorporated cities to legalize, by ordinance, acts prohibited as criminal by the general criminal laws of the state, or to enforce ordinances in conflict with the general law. In case of a conflict, the ordinance must give way. The ordinances authorized by the charter of Boise City must be in harmony with the general laws of the state."

So it is seen that this authority only goes to the effect of holding that the city council cannot, by ordinance, nullify a state law. This case would be in point if the city council of Tulsa had passed an ordinance licensing the sale of intoxicating liquors in its corporate limits, and the petitioner had obtained a license under such ordinance, and upon being prosecuted in the state court had attempted to plead such ordinance and such license as a justification for such act. If there is anything in our former opinion which even intimates that the city council of Tulsa can nullify and defeat a state law, we are not aware of it, and certainly have no desire to be so understood.

Counsel cite *State v. Welch*, 36 Conn. 215. In that case the appellant was prosecuted in the police court of Meriden, charged with keeping open within said city a saloon where intoxicating liquors were kept and sold, between the hours of 10:30 o'clock at night and 5 o'clock in the morning, in violation of the by-laws of said city. The Supreme Court said:

"This is a prosecution against the defendant for the infliction of a penalty, claimed to have been incurred by him, for the violation of a by-law of the city of Meriden. The complaint is

demurred to on the ground that the charter confers upon the court of common council no power to make the by-law in question. It is true, as the defendant claims, that the forty-seventh section of the charter confers no authority, in terms, to impose a penalty; and if the power claimed is derived from that section alone it might be difficult to sustain the validity of this by-law. It is clearly inferable, however, from that section that the charter somewhere contains authority for making such a by-law. It plainly contemplates that the court of common council shall, from time to time, 'fix upon and designate' some 'suitable hour of the evening' for closing 'all saloons and other places where spirituous and intoxicating liquors are commonly kept and sold.' By a reference to the seventeenth section, which enumerates the subjects in relation to which by-laws may be made, we find among them: 'The preservation of public peace and good order; the prevention and quelling of riots and disorderly assemblages; the suppression of gambling houses, and houses of ill fame, and disorderly houses; the conferring upon the mayor and police officers of the city all powers necessary for such purposes, etc.' Construing the language here used in connection with the forty-seventh section, we entertain no doubt that the by-law is authorized by the city charter."

Counsel cite *Ex parte Bourgeois*, 60 Miss. 663, 45 Am. Rep. 420. Bourgeois was prosecuted in the city court of Bay St. Louis for the offense of being drunk in a public place, which act was also an offense punishable under the state law. The Supreme Court said:

"Did the charter warrant this assumption of power? We held, in *Johnson v. State*, 59 Miss. 543, that it was competent for the Legislature to delegate to a municipality the right to make acts which were punishable by the state punishable also by the municipal authorities, when committed within their corporate limits."

After discussing the provisions of the charter of the city of Bay St. Louis, the court proceeded as follows:

"We can see no clear expression of legislative will that an observance of the criminal laws of the state might, within the city, be insured by the double security of state and municipal authority by making a violation of them doubly punishable as an offense, both against the peace and dignity of the state and against the quiet and good order of the city. While it might be eminently

wise and proper so to do, it does not clearly appear that it has been done. The offense committed by the relator in this case was that of being drunk in a public place, which is criminal and punishable under the state law. For it he had been punished by the justice of the peace of the beat in which the city is included. We fail to discover any authority in the charter for punishing it again as an offense against the city. The judgment of the chancellor, discharging the relator, is affirmed."

The petitioner in this case was discharged, not because a municipal corporation could not make acts which are punishable by the state punishable also by the municipal authority, but solely upon the ground that the power to do this was not clearly expressed in the charter. From this it is plain that the Supreme Court of Mississippi took the same view of this question that we do, viz., that, if it clearly appears from the charter of the city of a municipal corporation that the city council is clothed with authority to make an act which is an offense against the state law an offense also against the corporation, it may be eminently wise, proper, and legal for them to do so. The case above quoted from nowhere states that this power exists only in those cities where it has been expressly granted by the charter, as counsel for petitioner contend. If it clearly appears from the charter that the power was granted, it exists under this authority.

Counsel for petitioner cite the case of *City of Corvallis v. Carlile,* 10 Or. 139, 45 Am. Rep. 134. Speaking of municipal corporations, the Supreme Court of Oregon said:

"They can exercise no powers but such as are expressly conferred upon them by the act by which they are incorporated, or are necessary to carry into effect the powers thus conferred, or are essential to the manifest objects and purposes of the corporation. The rule is well expressed by Mr. Justice Nelson, in the case of *Minturn v. Larue,* 23 How. 435 [16 L. Ed. 574], in the following language: 'It is a well-settled rule of construction of grants by the Legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act, or derived therefrom by necessary implication, regard being had to the object of the grant.' "

This authority does not sustain the assertion of counsel that

municipal corporations can only exercise such powers as are conferred upon them by express grants, but it sustains the position which we have asserted—that it can exercise all such powers as are necessary to carry into effect the powers expressly granted, or as are essential to the manifest objects and purposes of the corporation.

If time and space permitted we would discuss in detail the other authorities cited by counsel for petitioner. We have carefully examined each case referred to, and while it is true that some of them do appear to sustain the position taken by counsel for petitioner, yet upon close examination it will be found that they are based upon different constitutional and statutory provisions from those by which we are bound in Oklahoma. By way of illustration, take the case of *Baxter, Petitioner,* 12 R. I. 13. In that case the Supreme Court of Rhode Island held that an ordinance of the city of Providence, prohibiting the opening of shops, etc., on Sunday, was void, because it was inconsistent with the Sunday laws of the state, but they state as their reasons for this as follows:

"The statute, Gen. St. R. I. c. 35, § 22, provides that: 'No ordinance or regulation whatsoever, made by a town council, shall impose, or at any time be construed to continue to impose any penalty for the commission or omission of any act punishable as a crime, misdemeanor, or offense, by the statute law of the state.' The statute, Gen. St. R. I. c. 232, § 17, subjects to a penalty any person who does any labor, or business, or work of his ordinary calling, or uses any recreation on Sunday, works of necessity and charity only excepted. The prohibition covers the opening of any shop, store, or place of trade or entertainment, by its keeper, for business on Sunday, and consequently covers the act of which the petitioner has been convicted."

In a number of states constitutional or legislative provisions prohibit municipal corporations from making an act which is an offense against the state law punishable also under the city police regulations; and other states provide that where a city ordinance makes an act an offense, and the same act is also an offense against the state law, that the city must provide the

same punishment for the act that is prescribed by the state law, and that when this is done a prosecution, either by the state or city, will bar a second prosecution for the same act. Other states allow municipal corporations to enforce the state laws, as against all violations committed within the limits of the city, when the punishment for such offense is within the jurisdiction of the municipal courts. Where these provisions of law exist, the courts will not permit double prosecutions for the same act, upon the ground that it constitutes the same offense. This is the only ground consistent with the philosophy of the law upon which it can be denied that municipal corporations have the power to punish acts which come within the meaning of police regulations, although the same acts may be violations of the state law and punishable as such. The most of the authorities cited by counsel for the petitioner, which appear to sustain their contention, are based upon one or the other of the above conditions. With this explanation, it is manifest that these authorities have no application to Oklahoma.

We have frequently announced the doctrine that Oklahoma should be governed by the living, and not by the dead; that law is the perfection of reason and the embodiment of justice, and is therefore a progressive science, and should keep even step with the march of civilization and the development of human character and the necessities of mankind growing out of the constant changes of our conditions. Therefore, even if no court had so decided, we would not hesitate to recognize and enforce the doctrine announced in our previous opinion. We believe it to be based upon necessity and to be supported by reason and justice. Considerations of this kind are of paramount weight with us in the decision of all questions which are not arbitrarily settled by constitutional or statutory provisions. It must be manifest to all that conduct and conditions which, in an open and thinly settled country, might be entirely unobjectionable, in the heart of a city would be dangerous to peace, quiet, and good order, ruinous to comfort, highly injurious to health, destructive of property values, productive of disease and death, and subversive of good

morals, and which would therefore constitute an intolerable nuisance. Again, it would be practically impossible, without incurring ruinous expenses, for a state or county to properly police a city and to provide for all the varied and changing wants and conditions, which, of necessity, arise in densely populated communities. Even if this were practicable, it would be inconsistent with the fundamental principle of American liberty, viz., the right and capacity of the people for local self-government. Deny this doctrine, and we would trample upon our ideals, and the entire fabric of our government would fall.

But to return to the question now before us. The temptations and opportunities to commit offenses in large cities and the difficulty of detecting offenders and bringing violators of law to justice in such places is much greater than it is among rural populations. We might continue to give reasons of this character which clearly justify and make necessary what is known as the police power of a state, which time and experience have demonstrated can be far better enforced by a municipal corporation than by the regularly constituted state authorities. The sale of intoxicating liquors, or having such liquors in one's possession for the purpose of sale, is a much greater menace to the peace and good order of society in a city, on account of the danger of riots and public disturbances, owing to the congregation in cities of idle, lewd, lawless, and disreputable characters, than such acts would be without the borders of a city. In fact, it would be almost impossible for the city authorities to maintain peace and good order, if they did not have jurisdiction over such offenses. It would be an absurdity to require city authorities to promote public health and morals and to protect the people of a city from lawlessness, and at the same time prohibit them from closing up dens of infamy, which, if not restrained, would whiten and palsy every city with the leprosy of vice.

It is true that under our statutes and Constitution the sale of intoxicating liquors in this state, and having such liquors in one's possession for the purpose of sale, constitute misdemeanors,

and punishments are inflicted by the state for these offenses. But allowing a municipal corporation to inflict a special punishment for those acts, when committed within its limits, does not in the least abrogate, supplant, conflict with, or impair the efficiency of, the state laws, but rather it assists in their enforcement by providing more efficient means for the detection of such crimes and imposing additional punishment therefor, which is fully justified by the additional criminality of the act and its danger to society, because committed within the limits of a city. The infliction of this special punishment in no manner exempts a defendant from the penalties of the state law. State and county officers, charged with the duty of enforcing the laws, should take notice of all such convictions in municipal courts, and avail themselves of the information and testimony thus offered and proceed against such offenders under the state law as soon as they can do so, without interfering with the action of the municipal authorities in these cases. If this is done in good faith, the enforcement of the prohibitory liquor laws of the state will be greatly facilitated. The Legislature should make it a ground for the removal from office of any official who does not pursue this course.

A great deal of loose language has been used and many crude ideas have been expressed on the subject of the illegality of so-called double punishments for the same offense. There is abso-lutely nothing in the contention that allowing both jurisdictions to punish such offenses is a violation of the constitutional provisions that no person shall twice be put in jeopardy for the same offense, because the offenses are entirely separate and distinct, and are against different jurisdictions and governments, although they both rest upon the same acts. By way of illustration, suppose, for instance, that the sale of intoxicating liquor was permitted in the state of Oklahoma under license, and the charter of the city of Tulsa permitted the city to impose a license for selling intoxicating liquors in the city, which unquestionably could be done if this was a license state, and the petitioner had sold

5 Cr.—27

only one drink of intoxicating liquor without having obtained a license from the United States government, a license from the state of Oklahoma, and a license from the city of Tulsa, who would be bold enough to say that this single act would not constitute three separate and distinct offenses, one against the United States government, one against the state government, and one against the city government? Is it not true that since statehood the man who sells intoxicating liquors in Oklahoma has been liable to two prosecutions, first, a violation of the United States law for selling such liquor without a license; second, a violation of the state law for selling such liquor at all?

Suppose that A. were to counterfeit any gold or silver coin of the United States within this state, would he not violate section 2574 of Snyder's Comp. Laws of Okla. 1909, as well as the United States statutes upon the subject of counterfeiting, and would not a single act of such counterfeiting subject A. to two separate and distinct punishments? We might multiply illustrations of this character indefinitely, but these are sufficient to show that making the same act two separate and distinct offenses is not a violation of the constitutional provision that no person shall twice be put in jeopardy for the same offense.

Inasmuch as our views upon this question have been vigorously assailed, not only by counsel for petitioner, but also by other reputable members of the bar, we will now proceed to show that, even if the overwhelming weight of authority and the "sounder reasoning" are against us, as counsel for petitioner so positively and confidently assert, yet we are at least sustained by some respectable authorities. We will not content ourselves with merely citing authorities, as counsel for petitioner did, which might or might not sustain our views, but we will quote exactly what these authorities say, so that all may be able to see and understand just what they do decide.

In the case of the *Town of Bloomfield v. Trimble*, 54 Iowa, 399, 6 N. W. 586, 37 Am. Rep. 212, the Supreme Court of that state said:

"It is true the statute does not specifically provide that a municipal corporation may punish persons for intoxication or drunkenness. But there are many subjects of municipal control which are not expressed and particularly named in the section of the Code conferring powers upon cities and towns. Section 456, after enumerating certain powers of the incorporation, such as the prevention of riots, noise, disturbance, disorderly assemblages, etc., provides that they shall have power 'to preserve peace and order therein.' By section 482 municipal corporations are empowered to make and publish ordinances not inconsistent with the laws of the state, 'and as such shall seem necessary and proper to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience, of such corporation and the inhabitants thereof.' We entertain no doubt that, under these provisions, a town or city may, by ordinance, punish for drunkenness. The town council has, by ordinance, determined that, where a person voluntarily deprives himself of his reason by intoxication, he has done an act which is derogatory to the 'peace and order' of the incorporation, and 'the comfort and convenience of the inhabitants.' To hold that the council, when it enacted this ordinance, exceeded its powers, and was mistaken as to the effect of drunkenness in the incorporation, and that it does not affect the public peace and order, and the comfort and convenience of the inhabitants, would, it seems to us, be contrary to the common experience of mankind. The ordinance in question is in substance the same as section 1548 of the Code, which provides for the punishment of persons found in a state of intoxication. Both the state law and the ordinance provided for the punishment of the same offense. That an ordinance of this character is not void, see Cooley's Const. Lim. 198, where it it said: 'Indeed, the same act may constitute an offense against both the state and the municipal corporation, and may be punished under both without violation of any constitutional principal.' The learned author states that such is the clear weight of authority. See, also, 1 Bish. Crim. Law, §§ 145, 835-837, 897. In our opinion the demurrer to the information should have been overruled."

In the case of the *City of St. Louis v. Schoenbusch*, 95 Mo. 618, 8 S. W. 791, the Supreme Court of that state said:

"At the close of the case for the city, the defendant moved for his discharge, which motion was overruled. The point made

in the trial court and pressed here is that the ordinance is void, first, because the offense charged is punishable by the general statute law of the state, and, second, because the city has no charter power to pass the ordinance. To cruelly beat any horse, ox, or domestic animal is made a misdemeanor by the general laws of the state (R. S. §§ 1375, 1609); but this does not prevent the city from prohibiting the same act by ordinance, and punishing the offender for a violation thereof. It is the well-settled law of this state that municipal corporations may, by ordinance, prohibit acts which are made misdemeanors under the general statutes of the state; and for a violation of such ordinances the city may maintain a proceeding in its own name to impose and collect a fine. *City of St. Louis v. Bentz,* 11 Mo. 61; *City of St. Louis v. Cafferata,* 24 Mo. 94; *State v. Cowan,* 29 Mo. 330; *City of Independence v. Moore,* 32 Mo. 392; *Ex parte Hollwedell,* 74 Mo. 395.

"The only debatable question is whether the city has the power to pass the ordinance. After the enumeration of various specific powers, authority is given to the mayor and assembly 'to pass all such ordinances, not inconsistent with the provisions of this charter, or the laws of the state, as may be expedient in maintaining the peace, good government, health, and welfare of the city, its trade, commerce, and manufacture, and to enforce the same by fines and penalties,' etc. R. S., p. 1588, § 26, par. 14. It cannot be contended that the ordinance in question is inconsistent with other provisions of the city charter. Nor is it inconsistent with the Constitution or any statute law of the state. This is true in respect of state statutes, as we have seen, though the same act may be punished, either under the statute or ordinance. The ordinance was doubtless designed to reach some cases of ill treatment of animals, not embraced in the general statutes. Is the ordinance, therefore, fairly within the power to maintain the peace, good government, and welfare of the city? We think it is.

"In *City of St. Louis v. Bentz,* 11 Mo. 61, the defendant was fined under an ordinance concerning vagrants. The ordinance had for its authority the power 'to regulate the police of the city.' This court then said: 'Although this is a very vague and indefinite grant of power, yet it must have been intended to confer other powers than those specifically granted, otherwise there existed no propriety in the enactment. When, therefore, it can be seen that the exercise of any jurisdiction by the corporation

can be clearly brought within the scope of this grant, without a violation of the Constitution or a conflict with the laws of the state, there can be no objection to its exercise.' In the case of *City of St. Louis v. Cafferata,* 24 Mo. 94, the ordinance made it a misdemeanor for any one to keep open his place of business on Sunday. It was held that the ordinance was a lawful exercise of the power given to the city 'to make such rules, regulations, by-laws, and ordinances for the purpose of maintaining the peace, good government, and order of the city, and the trade, commerce, and manufacture thereof, as they may deem expedient, not repugnant to the Constitution and laws of this state.'

"These cases serve to show that general welfare clauses are not useless appendages to the charter powers of municipal corporations. They are designed to confer other powers than those especially named. The difficulty in making specific enumeration of all such powers as may be properly delegated to municipal corporations renders it necessary to confer such powers in general terms. Ordinances relating to the comfort, health, good. order, convenience, and general welfare of the inhabitants are regarded as the exercise of police regulations. 1 Dill. on Mun. Corp. (3d Ed.) § 141. Laws for the prevention of cruelty to animals may well be regarded as an exercise of such police powers. That good government calls for the condemnation of such acts as are prohibited by the ordinance ought not to be questioned. The subject is pre-eminently one for local municipal regulation."

In the case of *State v. Crummey,* 17 Minn. 72 (Gil. 53), the Supreme Court of that state said:

"The statute cannot be construed into an abrogation or suspension of the common law within the city of St. Paul. 1 Bish. Crim. Law, §§ 197-200. And though, in pursuance of the authority thus given, the common council has passed ordinances prohibiting gambling, and providing for the punishment of any one who shall keep a house or place for the purpose of gambling (Chart. & Ord. St. Paul, 298), such affirmative legislation in no way supersedes the common law against keeping a common gaming house. 1 Bish. Crim. Law, *supra.* It cannot be said, as is held in some states, that the ordinance repeals by implication the common law, as covering the whole ground occupied by the latter. The offender at common law is prosecuted by indictment and punishable by fine and imprisonment. Under the ordinance

he is prosecuted by complaint in the name of the city before the justice, and punishable by fine only. And, if these were not so, a repeal by implication can only arise where the later statute is so inconsistent with the former that both cannot stand together. I Bish. Crim. Law, §§ 197, 199, 202. But by the city charter its ordinances, in so far as they are repugnant to or inconsistent with the Constitution or laws, have not the force of law. The ordinance could not, therefore, have the effect of thus repealing the common law, for it would be a nullity, in so far as it was inconsistent therewith. Judgment must be entered, affirming the judgment of this district court and directing its sentence to be executed."

In the case of *Polinsky v. People,* 11 Hun, 395, the Supreme Court of New York said:

"We do not understand it to be the law that an ordinance substantially authorized by the Legislature to be adopted by a department of the city is void or inoperative because the act forbidden by the ordinance is also forbidden by some general law applicable to the whole state. Bishop, the ablest of our writers on criminal law, states the rule in these words: 'The true doctrine appears to stand thus: If the statute so authorizes, it is not apparent why a city corporation may not impose a special penalty for an act done against it; while the state imposes also a penalty for the same act done against the state. It is so where an act is in violation of the laws, both of the United States and a state.' Bishop on Statutory Crimes, §§ 20, 23; *Rogers v. Jones,* 1 Wend. (N. Y.) 237 [19 Am. Dec. 493]."

In the case of *Rogers v. Jones,* 1 Wend. 261, 19 Am. Dec. 493, the Supreme Court of New York said:

"But it is said that the by-law of a town or corporation is void, if the Legislature have regulated the subject by law. If the Legislature have passed a law, regulating as to certain things in a city, I apprehend the corporation are not thereby restricted from making further regulations. Cases of this kind have occurred, and never been questioned on that ground; it is only to notice a case or two out of many. The Legislature have imposed a penalty of $1, for servile labor on Sunday; the corporation of New York have passed a by-law, imposing the penalty of $5 for the same offense. As to storing gunpowder in New York, the Legislature and corporation have each imposed the same penalty.

Suits to recover the penalties have been sustained under the corporation law. It is believed that the ground has never been taken that there was a conflict with the state law."

In the case of *State v. City of Trenton,* 51 N. J. Law, 498, 18 Atl. 116, 5 L. R. A. 352, the Supreme Court of New Jersey said:

"A similar contention was made in the case of *Howe v. Plainfield,* 37 N. J. Law, 145, and is considered at length by Justice Dalrimple, delivering the opinion of the court in that case. The doctrine there established is that certain acts which are indictable as offenses against the state may also be by the Legislature constituted offenses against the police regulations of municipalities, so as to subject the offender to the mode of trial incident to proceedings for the violation of ordinances, and that in such cases, if the Legislature has not made special provision for a trial by jury, it cannot be demanded as a matter of right."

In the case of *Theisen v. McDavid,* 34 Fla. 444, 16 South. 322 (26 L. R. A. 234), the Supreme Court of that state said:

"The offense, so far as the municipality is concerned, is complete, independent, and distinct when a municipal law is violated, and the punishment follows from a violation of its law without reference to the infraction of the law of any other government. The Constitution does not prohibit a second jeopardy for the same act, but forbids the second jeopardy for the same offense. Constitution of 1885, section 12, Declaration of Rights. Consequently, if the offender has been once, in the municipal courts, put in jeopardy for the offense involved in the infraction of the municipal law, he cannot again, by the municipal authorities, be put in jeopardy for the same; but such jeopardy will not shield him from trial and punishment by the state authorities 'for the distinct and independent offense, though involving the same act, that grows out of the transgression of the state law. 1 Dillon on Municipal Corporations (4th Ed.) § 368, and citations; Cooley's Const. Lim. (6th Ed.) page 239, and citations; Horr & Bemis on Mun. Police Ordinances, § 89; Bishop on Statutory Crimes, §§ 23, 24, and citations; *City of St. Louis v. Cafferata,* 24 Mo. 94; *State v. Sly,* 4 Or. 277; *Howe v. Treasurer of Plainfield,* 37 N. J. Law, 145; *City of Brooklyn v. Tonybee,* 31 Barb. (N. Y.) 282; *Megowan v. Commonwealth,* 2 Metc. (Ky.) 3; *Waldo v. Wallace,* 12 Ind. 569; *City of Brownville v. Cook,* 4 Neb.

101; *Hughes v. People*, 8 Colo. 536 [9 Pac. 50]; *Mayor, etc., v. Allaire*, 14 Ala. 400; *State v. Ludwig*, 21 Minn. 202; *State v. Lee*, 29 Minn. 445 [13 N. W. 913]; *McInerney v. City of Denver*, 17 Colo. 302 [29 Pac. 516]; *Van Buren v. Wells*, 53 Ark. 368 [14 S. W. 38, 22 Am. St. Rep. 214]; *City of Plattsburg v. Trimble*, 46 Mo. App. 459; *City of De Soto v. Brown*, 44 Mo. App. 148; *Mayor, etc., of Nashville v. Linck*, 12 Lea (Tenn) 499; *State v. Fourcade*, 45 La. Ann. 717, 13 South. 187 [40 Am. St. Rep. 249]; *Liberman v. State*, 26 Neb. 464 [42 N. W. 419, 18 Am. Rep. 791]; *State v. Topeka*, 36 Kan. 76 [12 Pac. 310, 59 Am. Rep. 529]."

In the case of *Van Buren v. Wells*, 53 Ark. 371, 14 S. W. 38, 22 Am. St. Rep. 214, the Supreme Court of that state said:

"The acts of which the defendants in the first and third cases were accused, and a part of those with which the defendant in the second case was charged, are made penal by the statutes of this state. It may be conceded that they were made criminal before any of the ordinances prohibiting them were passed. Did the town or city councils that enacted the ordinances have the authority to pass them? The only authority which can rightfully be claimed for their enactment is section 764 of Mansfield's Digest. This section provides: 'Municipal corporations shall have power to make and publish, from time to time, by-laws or ordinances, not inconsistent with the laws of the state, for carrying into effect or discharging the power or duties conferred by the provisions of this act, and it is hereby made the duty of the municipal corporations to publish such by-laws and ordinances as shall be necessary to secure such corporations and their inhabitants against injuries by fire, thieves, robbers, burglars and other persons violating the public peace; for the suppression of riots and gambling and indecent and disorderly conduct; for the punishment of all lewd and lascivious behavior in the streets and other places; and they shall have power to make and publish such by-laws and ordinances, not inconsistent with the laws of this state, as to them shall seem necessary to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of such corporations and the inhabitants thereof.' Its language is sufficiently comprehensive to delegate the authority. But many courts have held that a municipal corporation can only pass ordinances punishing the same acts which are punishable under the general laws of the state,

when expressly authorized to do so, and that no such authority will be presumed from a grant of power general in its nature. If this be true, it must be because the effect of such ordinances is to supersede the general laws upon the same subject. We cannot see any good reason why such authority, fitting and proper to be delegated to a municipal corporation, and ·plainly conferred in general terms, cannot be exercised by the municipality, unless it be because it is inconsistent with the general laws. That is the effect of the authorities which hold it cannot be. Many of them say that the effect of such ordinances, if enforced, would be to oust the state of jurisdiction, or make the same offense punishable twice, once by the state and once by the corporation, contrary to the Constitution, and therefore they are invalid. *In re Sic,* 73 Cal. 142 [14 Pac. 405[; *Jenkins v. Thomasville,* 35 Ga. 145; *Mayor v. Hussey,* 21 Ga. 80 [68 Am. Dec. 452] ; *Adams v. Albany,* 29 Ga. 56; *Vason v. Augusta,* 38 Ga. 542; *Reich v. State,* 53 Ga. 73 [21 Am. Rep. 265] ; *Foster v. Brown,* 55 Iowa, 686 [8 N. W. 654] ; *Washington v. Hammond,* 76 N. C. 33; *State v. Langston,* 88 N. C. 692; *State v. Brittain,* 89 N. C. 574; *State v. Keith,* 94 N. C. 933; *Ex parte Smith,* Hemp. 201 [Fed. Cas. No. 12,967a] ; *Ex parte Bourgeois,* 60 Miss. 663 [45 Am. Rep. 520].

"But we do not think the ordinances in question are invalid because they make offenses twice punishable. Municipal corporations 'are bodies politic and corporate, vested with political and legislative powers for the local civil government, and police regulations of the inhabitants of the particular districts included in the boundaries of the corporations.' In some respects they are local governments established by law to assist in the civil government of the country. They are founded, in part, upon the idea that the needs of the localities for which they are organized, 'by reason of the density of population or other circumstances, are more extensive and urgent than those of the general public in the same particulars.' Many acts are often far more injurious, while the temptation to do them is much greater, in such localities than in the state generally. When done in such localities, they are not only wrongs to the public at large, but are additional wrongs to the corporations. To suppress them when it can be done, and, when there is a failure to do so, to punish the guilty parties, in many cases, form a part of the duties of such corporations. Many of them can and ought to be made penal by the incorporated cities and towns, although they are

already made so by the state. It sometimes becomes necessary
for them to do so in order to accomplish the objects of their
organization. When made penal by the state and the city or
town, each act becomes a separate offense against the state
and the municipality. In that event the penalty imposed by the
city or town is superadded to that fixed by the general law, on
account of the additional wrong done—for the offense against
the municipality. In such a case the wrongdoer would not be
twice punished for the same offense.

"In *Fox v. State of Ohio,* 5 How. 432 [12 L. Ed. 213], the
Supreme Court of the United States held that the passing a
counterfeit coin, which was punishable under the federal law,
might be punished by the state as a crime, and that the same act
was an offense against the federal government and against the
state government. In delivering the opinion of the court, in
*Moore v. Illinois,* 14 How. 19 [14 L. Ed. 306], Mr. Justice Grier
said: 'An offense, in its legal signification, means the transgres-
sion of a law. A man may be compelled to make reparation in
damages to the injured party, and be liable also to punishment
for a breach of the public peace, in consequence of the same act;
and may be said, in common parlance, to be twice punished for
the same offense. Every citizen of the United States is also a
citizen of a state or territory. He may be said to owe allegiance
to two sovereigns, and may be liable to punishment for an infrac-
tion of the laws of either. * * * That either or both may
(if they see fit) punish such an offender cannot be doubted. Yet
it cannot be truly averred that the offender has been twice pun-
ished for the same offense; but only that by one act he has com-
mitted two offenses, for each of which he is justly punishable.
He could not plead the punishment by one in bar to a conviction
by the other.'

"Judge Cooley says: 'Indeed, an act may be a penal offense
under the laws of the state, and further penalties, under proper
legislative authority, be imposed for its commission by municipal
by-laws, and the enforcement of the one would not preclude the
enforcement of the other.' And further says: 'Such is the clear
weight of authority, though the decisions are not uniform.' Coo-
ley, Const. Lim. (6th Ed.) page 239, and cases cited; *Mayor
v. Allaire,* 14 Ala. 400; *Hughes v. People,* 8 Colo. 536 [9 Pac.
50]; *Wragg v. Penn Township,* 94 Ill. 11 [34 Am. Rep. 199];
*Ambrose v. State,* 6 Ind. 351; *Williams v. Warsaw,* 60 Ind. 457;

*Town of Bloomfield v. Trimble,* 54 Iowa, 399 [6 N. W. 586, 37 Am. St. Rep. 212]; *Shafer v. Mumma,* 17 Md. 331 [79 Am. Dec. 656]; *Wayne County v. Detroit,* 17 Mich. 399; *State v. Oleson,* 26 Minn. 507 [5 N. W. 959]; *State v. Lee,* 29 Minn. 445 [13 N. W. 913]; *St. Louis v. Bentz,* 11 Mo. 61; *St. Louis v. Cafferata,* 24 Mo. 94; *Linneus v. Dusky,* 19 Mo. App. 20; *City of Kansas v. Clark,* 68 Mo. 588; *Ex parte Hollwedell,* 74 Mo. 395; *St. Louis v. Vert,* 84 Mo. 204; *Brownville v. Cook,* 4 Neb. 101; *Howe v. Treasurer of Plainfield,* 37 N. J. Law, 145; *State v. Bergman,* 6 Or. 341; *State v. Williams,* 11 S. C. 288; *Greenwood v. State,* 6 Baxt. (Tenn.) 567 [32 Am. Rep. 539]; *State v. Shelby,* 16 Lea (Tenn.) 240; *Hamilton v. State,* 3 Tex. App. 643; *McLaughlin v. Stephens,* 2 Cranch, C. C. 148 [Fed. Cas. No. 8.874]; *United States v. Wells,* 2 Cranch, C. C. 45 [Fed. Cas. No. 16,662]; *United States v. Holly,* 3 Cranch, C. C. 656 [Fed. Cas. No. 15,381].

"In Bishop on Statutory Crimes, it is said: 'If the statute so authorizes, it is not apparent why a city corporation may not impose a special penalty for an act done against it; while the state imposes a penalty for the same act done against the state.' Bish. St. Cr. § 23 (1st Ed.).

"In *Brizzolari v. State,* 37 Ark. 364, the validity of an ordinance passed by the common council of the incorporated town of Ft. Smith, on the 23d day of December, 1873, declaring that it shall be deemed a misdemeanor for any able-bodied person to be found within the limits of the corporation having no visible or apparent means of subsistence, and neglecting to apply himself to some honest calling, punishable by fine, came in question. It was insisted that this ordinance was abrogated by the adoption of the Constitution of 1874. This court held that, although the Constitution of 1874 vested exclusive original jurisdiction in all matters relating to vagrants in the county courts, it did not repeal the ordinance; that the jurisdiction vested in the county courts as to vagrants extended 'only to such matters of police regulations as are designed to prevent them from becoming burdensome to the county, or in their nature local or of special concern to the county,' thereby virtually holding the doctrine laid down by Judge Cooley.

"The ordinances in question are, therefore, not inconsistent with the general laws of the state upon the same subject; nor do they oust the state of any jurisdiction, if enforced, by making

the same acts punishable, and are not invalid for these reasons. The only question, then, is, Did the municipal corporations that passed them have the power to do so? The statutes expressly declare that they 'shall have power to make and publish such by-laws and ordinances, *not inconsistent with the laws of this state,* as to them shall seem necessary to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof.' The only limitation upon this power is the by-laws and ordinances must 'not be inconsistent with the laws of the state.' The ordinances in question do not fall within the limitations, and are wholesome provisions for the prosecution and improvement of the order and morals of the inhabitants for whose benefit. they were designed, and a proper exercise of the power conferred. They are consequently valid. *Mayor v. Allaire,* 14 Ala. 400; *Bloomfield v. Trimble,* 54 Iowa, 399 [6 N. W. 586, 37 Am. St. Rep. 212]; *St. Louis v. Bentz,* 11 Mo. 61; *St. Louis v. Cafferata,* 24 Mo. 94; *State v. Williams,* 11 S. C. 288; *Hamilton v. State,* 3 Tex. App. 643; *McLaughlin v. Stephens,* 2 Cranch, C. C. 148 [Fed. Cas. No. 8,874]; *United States v. Wells,* 2 Cranch, C. C. 45 [Fed. Cas. No. 16,662]; *City of St. Louis v. Shoenbusch* [95 Mo. 618], 8 S. W. 791; *State v. Beattie,* 16 Mo. App. 142; *Brownville v. Cook,* 4 Neb. 101."

In the case of *Ogden v. City of Madison,* 111 Wis. 422, 87 N. W. 570 (55 L. R. A. 506), the Supreme Court of Wisconsin said:

"It is now insisted that the offense charged was a misdemeanor under the laws of this state, and he could not be properly convicted in any other way than by the verdict of a jury in the municipal court. But is the prosecution here for a misdemeanor under the state law? It is true that the state law makes the keeping of a disorderly house known as a 'house of ill fame' a penal offense, and that the keeper thereof was indictable at common law. We may assume, for the purpose of this decision, that the person accused of such an offense was entitled to a jury trial when prosecuted under the state law. In *State v. Newman,* 96 Wis. 258, 71 N. W. 438, this court said: 'It seems to be the clear weight of authority that an act may be a penal offense under the laws of the state, and that further penalties, under proper legislative authority, may be imposed for its commission by municipal

by-laws or ordinances, and the enforcement of the one would not preclude the enforcement of the other.' That this proposition has most ample support may be seen by reference to the cases collected in Cooley's Const. Lim. 239, and 1 Beach, Pub. Corp. § 510."

In the case of *Ex parte Douglass,* 1 Utah, 108, the Supreme Court of that state said:

"The city of Salt Lake, by its council, passed an ordinance to punish parties who should be convicted of keeping any house for 'gaming purposes'; the general statutes of the territory had also provided against such offense. Held, that the power to punish this offense is embraced among those granted to Salt Lake by its charter. Held, further, that the city had power to punish the same, notwithstanding the offense was provided against by general law."

In the case of *City v. Holly and wife,* 50 La. Ann. 632, 23 South. 149, the Supreme Court of that state said:

"In the *Fourcade Case* [45 La. Ann. 717, 13 South. 187, 40 Am. St. Rep. 247], we declined to entertain the defendant's contention and affirmed the judgment appealed from; and in so doing our opinion collates a large number of pertinent authorities. From one of the cases cited—*McInerney v. City of Denver* [17 Colo. 302], 29 Pac. 516—we make the following extract, viz.: 'The Legislature may undoubtedly delegate to municipal corporations power to adopt and enforce by-laws or ordinances, on matters of special local importance, even though general statutes exist relating to the same subject. An ordinance must be authorized, and must not be repugnant to a statute over the same territorial area; but if there be no other conflict between the provisions of the statute and ordinance, save that they deal with the same subject, both may be given effect. The resulting or correlative doctrine is now too firmly established to admit of serious question that the same act may constitute two offenses, viz., a crime against the public law of the state, and also a petty offense against a local municipal regulation. The weight of authority likewise fully sustains the view that a prosecution and punishment for one of these offenses is no bar to a proceeding for the other,' etc., citing numerous authorities. The opinion further says: 'Whatever be the view concerning the gravity of the offense against a state law, the very fact that the Legislature authorizes the city to deal with

the same subject by ordinance indicates that to the legislative mind the act also properly constitutes one of those petty offenses regarded as local injuries. The public welfare requiring the maintenance of peace and good order, as well as of careful sanitary regulations in cities and towns, renders summary proceedings in many cases a necessity; and we are not now prepared to inaugurate the revolution that must follow the announcement of the.doctrine that a jury trial is an indispensable prerequisite.' "

In the case of *State v. Quong,* 8 Idaho, 194, 67 Pac. 491, the Supreme Court of that state said:

"It is not questioned that the complaint states specifically acts constituting the crime of battery, but counsel for appellant insists that, inasmuch as battery is a crime under the general criminal. statutes of this state, the municipality cannot enact an ordinance making it a crime, and that appellant could not be legally prosecuted and punished under such ordinance, as the ordinance conflicts with the general law of the state. We cannot sanction this contention. The ordinance is not in conflict, but in harmony, with the general law. The authority of the city to enact police regulations, and to enforce them where they do not contravene any general law of the state, is, under the provisions of our Constitution, beyond question. The municipal government may not take from the citizen any constitutional right—has no power to do so—yet by the express provisions of section 2, article 12, the power to make and enforce sanitary and police regulations is expressly given to cities and towns. The object of the provision is apparent; its necessity urgent. The burden of policing the different cities should not be thrown upon the state, nor upon the county in which the particular city in question may be situated. A prompt and efficient police service is absolutely necessary to a well-regulated and conducted city. This question was settled, so far as judicial action is concerned, in the case of *State v. Preston,* 4 Idaho, 215, 38 Pac. 695, where the same question here urged was raised, and decided adversely to appellant's contention. See, also, *In re Ridenbaugh,* 5 Idaho, 371, 49 Pac. 12. It is argued on behalf of the appellant that he was denied a constitutional right in the police court, by being denied a jury trial therein. This question is *dehors* the record. The appellant appealed to the district court, had a trial *de novo,* and appealed from the judgment of the district court. The proceedings in the

police court are not before us for review, except the complaint itself, and are not in the record."

In *Greenville v. Klemmis,* 58 S. C. 433, 36 S. E. 729, 50 L. R. A. 725, Chief Justice McIver of that state said:

"Indeed, it is well settled in this state, at least, that the same act may be made an offense, both against the state and the municipal law."

In *Commonwealh v. Goodnow,* 117 Mass. 115, the Supreme Court of that state said:

"The complaint alleges that the defendant caused to be constructed a window, which projected into West Brookline street, but makes no charge of maintaining after notice. The facts alleged are admitted by the defendant, but he contends that the ordinance is void, because inconsistent with the statute of 1799, under which such window may project one foot. The ordinance, so far as this offense is concerned, is clearly within the power conferred upon cities by St. 1848, c. 278 (Gen. St. c. 19, § 13), and the question is whether the city of Boston is restricted in its powers, under that statute and the provisions of its revised charter, by the statute of 1799, which, it is contended, allows by implication bow windows to project one foot into the street. The statute of 1799 gave no authority to the town of Boston to make any by-laws on the subject; it was a law of the commonwealth local in its operation, and acting directly upon the subject-matter and the person violating its provisions. By St. 1848, c. 278, this same subject-matter is put within the power and jurisdiction of cities, and they may assume such jurisdiction by making appropriate rules and regulations upon the subject, such as the safety of the public in each city may require. It is a general law, which it is to be presumed the public necessity required, and which applies to Boston, as well as other cities, especially when considered in connection with the powers conferred in section 35 of the revised charter, passed in 1854. If Boston had passed no ordinance on the subject, the statute of 1799 would be the only law in force; but having passed an ordinance, regulating and prohibiting all projections of this description, even when they extend less than one foot into the street, we are of opinion that such ordinance is valid, and in no proper sense inconsistent with the statute of 1799."

In *Shafer and wife v. Mumma,* 17 Md. 335, 79 Am. Dec. 656, the Supreme Court of that state said:

"But it is said, on behalf of the plaintiffs, that since the adoption of the present state Constitution the mayor of Hagerstown could not try and fine under the ordinance, because the exercise of such power is but the exertion of the judicial power, which, by the Constitution, is confined to certain specified classes of persons, and that the mayor of Hagerstown is not included in the enumeration. This argument would be entitled to great weight, if we thought the power exercised by the defendant was, in the sense of the Constitution, a part of the judicial power. But we entertain no such opinion. We regard it as but a part of the police power, as contradistinguished from the regular judiciary powers of the state. From time immemorial a distinction has been observed between the two, both in England and this country. It would be next to, if not quite, impossible for a large city like Baltimore to preserve order within its limits, preserve the streets free from interruption, indeed, to do most of the thousand things necessary to be done to carry on its various and indispensable operations, if in every case it were a necessary preliminary that the offender should be regularly prosecuted by presentment, indictment, and trial. It has always been understood that, under the police power, persons disturbing the public peace, persons guilty of a nuisance, or obstructing the public highways, and the like offenses, may be summarily arrested and fined, without any infraction of that part of the Constitution which apportions the administration of the judicial power strictly as such. We regard the power conferred on the corporation of Hagerstown, to summarily punish persons of the description the appellant, Elmira, is admitted to have been, as falling directly within the definition of a police regulation. She was punished for an offense against the decency and morals of Hagerstown, and not against those of the state; she offended within the 'corporate limits,' and for such offense she was made to answer. This did not wipe out all responsibility for the offense to the dignity and sovereignty of the state."

In *State v. Lee,* 29 Minn. 451, 13 N. W. 914, the Supreme Court of that state said:

"An offense against a municipal by-law, proceeding from the same act which also constitutes a felony under the general law,

is not for that reason to be considered the same offense, because the two are distinct in their legal character, both as to the nature and quality of the offenses and the jurisdictions offended against; and a former conviction, to be a bar, 'must be upon a prosecution for the same identical act and crime.' 4 Bl. Com. 336; *Wragg v. Penn Township*, 94 Ill. 11 [34 Am. Rep. 199]; *Freeland v. People*, 16 Ill. 380; *Severin v. People*, 37 Ill. 414. The terms 'by-laws,' 'ordinance,' and 'municipal regulation' have substantially the same meaning and are defined 'to be the laws of the corporate district, made by the authorized body, in distinction from the general law of the state.' They are local regulations for the government of the inhabitants of the particular place. 1 Dillon on Mun. Corp. (2d Ed.) §§ 244, 300. The authority to make 'by-laws' is a widely different thing from the general power to make 'laws.' *Com. v. Turner, supra* [1 Cush. (Mass.) 493]. Such by-laws, though given the force of law by the charter for the purposes of the municipal government, yet relate to that solely, and prosecutions for their violation have no reference, as a general rule, to the administration of criminal justice by the state. *Mayor v. Rouse*, 8 Ala. 515. The term 'police,' as used to define the character of such regulations and prosecutions, is used in its limited sense and more common acceptation, as relating to public order, health, etc. The term 'crime' or 'public offense,' as used in the general laws, is not understood as referring to the so-called offenses against a municipal government. Gen. St. 1878, c. 91, § 1 *et seq.; City of Kansas v. Clark*, 68 Mo. 588. By the Constitution of the state of Iowa it is provided that all 'prosecutions shall be conducted in the name and by the authority of the state.' It was held that this applied only to prosecutions for violations of the criminal laws of the state, and that it was not intended that the state should be a party to petty prosecutions under the police regulations of a municipal corporation. *City of Davenport v. Bird*, 34 Iowa, 524; *City of Emporia v. Volmer*, 12 Kan. 622. And where by the terms of a city ordinance it is provided that its violation shall be punished by the infliction of a pecuniary penalty enforced by imprisonment, the procedure in the name of the city, though commenced by warrant and criminal in form, is usually held quasi criminal, rather than criminal, in character, on the ground that it is not properly a crime against public law. *Ex parte Hollwedell*, 74 Mo. 395; *City of Kansas v. Clark, supra; Platteville, etc., v. McKornan*, 54 Wis. 487 [11 N. W. 798]; *Williams v. City Council*, 4 Ga. 509;

5 Cr.—28

*Williamson v. Commonwealth*, 4 B. Mon. (Ky.) 146; *City of Goshen v. Croxton*, 34 Ind. 239. The doctrine is also maintained that trial by jury may be withheld in cases of summary trials in police courts. *Byers v. Commonwealth*, 42 Pa. 89; *Howe v. Treasurer of Plainfield*, *supra* [37 N. J. Law, 145]; Dillon on Mun. Corp. (2d Ed.) § 361, note."

In *People v. White Lead Works*, 82 Mich. 479, 46 N. W. 737 (9 L. R. A. 722), the Supreme Court of that state said:

"The ordinance under which defendants were convicted is not invalid nor unconstitutional because the general statutes of the state provide for the conviction and punishment of the like offenses. This was settled in this state in the case of *People v. Hanrahan*, 75 Mich. 611 [42 N. W. 1124, 4 L. R. A. 751]. See, also, Cooley, Const. Lim. 199; *State v. Ludwig*, 21 Minn. 202; *Shafer v. Mumma*, 17 Md. 331 [79 Am. Dec. 656]; *St. Louis v. Bentz*, 11 Mo. 61; *St. Louis v. Cafferata*, 24 Mo. 94; *Blatchley v. Moser*, 15 Wend. (N. Y.) 215; *Levy v. State*, 6 Ind. 281."

In *Riley v. Trenton*, 51 N. J. Law, 498, 18 Atl. 116, 5 L. R. A. 352, the Supreme Court of New Jersey said:

"A similar contention was made in the case of *Howe v. Plainfield*, 37 N. J. Law, 145, and is considered at length by Justice Dalrimple, delivering the opinion of this court in that case. The doctrine there established is that certain acts which are indictable as offenses against the state may also be, by the Legislature, constituted offenses against the police regulations of municipalities, so as to subject the offender to the mode of trial incident to proceedings for the violation of ordinances, and that in such cases, if the Legislature has not made special provision for a trial by jury, it cannot be demanded as a matter of right. This case, which has been followed by this court without question, must be considered as settling the issue against the contention of the prosecutor's counsel (*Greeley v. Passaic*, 42 N. J. Law, 87), the present case not being within the exception as to offenses indictable at common law (*State v. Anderson*, 40 N. J. Law, 224)."

In the case of *McLaughlin v. Stephens*, 16 Fed. Cas. 234, the United States Circuit Court of the District of Columbia, said:

"Trespass against the defendant (who was a constable), for levying a penalty of $20, under the by-law of the 15th of June, 1816, for keeping a faro table. By the amended charter of 1804 (section 5) the common council of Alexandria has power to make 'all laws which they shall conceive requisite' for the regulation of

the morals and police of the town, and 'for the prevention and removal of nuisances,' 'and to enforce the observance of their said laws by reasonable penalties and forfeitures, to be levied upon the goods and chattels of the offender,' provided that such laws shall not be inconsistent with the laws and Constitution of the United States. Mr. Mason, for plaintiff, contended that the power to make by-laws, was not intended to give the corporation power to make laws concerning matters which were already regulated by the general law of the land; but only concerning such subjects as affected the morals or police of the town exclusively. That the offense was already provided for and prohibited by the act of assembly of Virginia of the 19th of January, 1798, p. 373. That gaming did not affect the town exclusively. That the plaintiff might be twice punished for the same offense, if he was liable to this penalty. Mr. Taylor, *contra.* This by-law applies exclusively to the police of the town. The penalty is for keeping the gaming table in the town, which is a circumstance of aggravation of the offense, and is necessary to the conviction. The court (*nem. con.*) was of opinion, that the corporation had power to pass the by-law, and to enforce it in this manner."

In the case of *U. S. v. Holly,* 26 Fed. Cas. 346, the United States Circuit Court of the District of Columbia said:

"In the case of *U. S. v. Wells,* Fed. Cas. No. 16,661, at June term, 1812, the indictment was for keeping a faro table, in a house occupied by a tavern keeper, contrary to Acts Md. 1797, c. 110. The defense was that he, as keeper of the faro table, had been fined $20 under the by-law of Georgetown of March 7, 1806, for 'an offense of gaming' at the table. It was there also urged that the act of Congress to amend the charter of Georgetown, passed March 3, 1805 (2 Stat. 332), giving to the corporation the power 'to restrain or prohibit gambling,' to impose 'and appropriate fines, penalties, and forfeitures for breach of their ordinances,' and 'to pass all laws, not inconsistent with the laws of the United States, which may be necessary to give effect and operation to all the powers vested in the said corporation,' and the by-law of March 7, 1806, by which the corporation executed the power given them to restrain or prohibit gambling, operated as a repeal of Acts Md. 1797, c. 110. But the court in that case was of opinion that the act of Maryland was not repealed; and ordered judgment to be entered for the penalty of £50. The offense under the act of Maryland was the setting up and maintaining a faro table, or other device for the purpose of gaming for money, in a

dwelling house occupied by a tavern keeper. The offense under the by-law was the setting up, keeping, or maintaining a public gaming house, or public gaming table, or other device for common gaming; and the by-law gave a penalty of $20 for every offense of gaming at the table, to be paid by the keeper, whether it were or were not kept in a house occupied by a tavern keeper. That case was stronger in favor of the defendant than this; for there the by-law covered the whole offense described in the act of Maryland. The court, however, thought that the penalty of the by-law was cumulative, and intended to be in addition to that imposed by the Maryland law.

"The case of licenses for taverns, retailers of spirituous liquors, and billiard tables is different from this, which is an offense at common law. There the offense was a mere *malum prohibitum;* a penalty for not paying a tax and taking a license from a particular authority. When the tax was given to the corporation, as well as the means to enforce its payment, the whole subject was transferred to the corporation as a matter of revenue. But a common nuisance is a *malum in se,* or it would not be a common-law offense; and a delegation of power to legislate upon the subject cannot be construed into an intention to repeal the common law; for even a providing a new punishment for a common-law offense has never been held to prevent a conviction upon an indictment for the offense at common law, without express words to that effect; much less would that effect be produced by a delegation of power to legislate upon the subject. We are, therefore, of opinion, that the offense is still indictable at common law, and that judgment should be rendered for the United States upon the verdict. Judgment for the United States, for a fine of $200."

We have by no means exhausted the authorities supporting the position which we have taken with reference to this matter, but if those from which we have quoted, as well as those cited in the original opinion of this court, are not sufficient to establish the doctrine that a municipal corporation, as a police regulation, may punish an offense committed within its limits, notwithstanding the act which constitutes the offense is also a violation of the state law, then no legal principle has been settled in American jurisprudence.

Counsel in their brief say:

"We urge that the petitioner was entitled to a trial by jury in the municipal court of the city of Tulsa, and that the court is in error in holding that the right of appeal to a court in which a jury trial may be had meets the constitutional guaranty of a trial by jury."

In support of this position, they cite *Evans v. Willis,* 22 Okla. 310, 97 Pac. 1047, 19 L. R. A. (N. S.) 1050, and *Callan v. Wilson,* 127 U. S. 540, 8 Sup. Ct. 1301, 32 L. Ed. 223. We are utterly at a loss to understand why these cases were cited by counsel. The case of *Evans v. Willis,* decided by our own Supreme Court before this court was created, does not in the least involve the question of a trial by jury. It simply presents the question as to whether or not a criminal prosecution can be instituted in a court of record in this state by means of a paper, purporting to be an information, presented in court, signed by a private person who was neither the county attorney of the county, nor any other officer authorized by law to institute such prosecution and sign such information. The court held that, where a written instrument purporting to be an information is not presented and signed by the county attorney, or by some one authorized by law to do so, such instrument is invalid and does not give the court within which it is presented any jurisdiction of such action or prosecution, and that, where a defendant had been so prosecuted and convicted in a county court, a writ of prohibition would lie, restraining such court from proceeding to enforce the judgment of such conviction. To this we heartily assent.

The case of *Callan v. Wilson* was an appeal from the Supreme Court of the District of Columbia to the Supreme Court of the United States, and is based upon a construction of article 3 of the Constitution of the United States, which provides that the trial of all criminal cases, except cases of impeachment, shall be by jury, and which also involved a construction of the fifth and sixth amendments to the Constitution of the United States. Quoting from Madison's Papers and Elliott's Debates, the court declared that these sections of the Constitution provided for a trial by jury of such offenses, committed out of a state, and the

court held, as the District of Columbia was not a part of a state, that these provisions were applicable to the city of Washington. How these sections of the Constitution of the United States can be made applicable to the procedure established by a state for enforcing police powers we cannot understand. As we understand the law, each state has the right to establish its own system of procedure for enforcing its laws and police regulations among its people, and that all that is necessary is that this procedure shall be fair, so as not to amount to a denial of justice .to any person or class, and shall operate equally upon all persons and classes, and the Supreme Court of the United States has repeatedly so decided.

In the case of *Spies v. Ill.,* 123 U. S. on page 166, 8 Sup. Ct. on page 24 (31 L. Ed. 80), we find the following:

"That the first 10 articles of amendments were not intended to limit the powers of the state governments in respect to their own people, but to operate on the national government alone, was decided more than half a century ago, and that decision has been steadily adhered to since. *Barron v. Baltimore,* 7 Pet. 243, 247 [8 L. Ed. 672]; *Livingston v. Moore,* 7 Pet. 469, 552 [8 L. Ed. 751]; *Fox v. Ohio,* 5 How. 410, 434 [12 L. Ed. 213]; *Smith v. Maryland,* 18 How. 71, 76 [15 L. Ed. 269]; *Withers v Buckley,* 20 How. 84, 91 [15 L. Ed. 816]; *Pervear v. Commonwealth,* 5 Wall. 475, 479 [18 L. Ed. 608]; *Twitchell v. Commonwealth,* 7 Wall. 321, 325 [19 L. Ed. 223]; *Justices v. Murray,* 9 Wall. 274, 278 [19 L. Ed. 658]; *Edwards v. Elliott,* 21 Wall. 532, 557 [22 L. Ed. 487]; *Walker v. Sauvinet,* 92 U. S. 90 [23 L. Ed. 678]; *United States v. Cruikshank,* 92 U. S. 542, 552 [23 L. Ed. 588]; *Pearson v. Yewdall* 95 U. S. 294, 296 [24 L. Ed. 436]; *Davidson v. New Orleans,* 96 U. S. 97, 101 [24 L. Ed. 616]; *Kelley v. Pittsburg,* 104 U. S. 78 [26 L. Ed. 658]; *Prosser v. Illinois,* 116 U. S. 252, 265 [6 Sup. Ct. 580, 29 L. Ed. 615]."

In the later case of *Brown v. N. J.,* 175 U. S. 172, 20 Sup. Ct. 77, 44 L. Ed. 119, the Supreme Court of the United states declared that the "the first ten amendments to the federal Constitution contained no restriction on the powers of a state, but were intended to operate solely on the federal government."

So far as we have been able to find, the Supreme Court of the United States has never held adversely to this position. The assumption, therefore, of counsel for petitioner that the case of *Callan v. Wilson*, 127 U. S. 540, 8 Sup. Ct. 1301; 32 L. Ed. 223, supports their contention is absolutely without warrant or authority of law.

We feel that we owe an apology to the profession and the people of the state in having taken up so much time in the investigation of this question and occupied so much space in quotations from authorities; but our excuse is the importance of the question, and the fact that it has never been passed upon in this state, until presented by the *habeas corpus* proceedings of the petitioner, justifies the attention which we have given it, so that the bench and bar of the state can see just what the authorities on this question establish. Courts, as well as attorneys, often copy a long list of citations from some digest and make a cheap display of industry and learning, when an examination of the cases cited would show that but a few of them were in point, and that many of them were in direct conflict with the proposition in support of which they were cited.

The motion for a rehearing is overruled, and the original opinion of this court is in all things affirmed. The writ of *habeas corpus* is denied, and the petitioner is remanded to the custody of the chief of police of the city of Tulsa, with directions to enforce the judgment of the municipal court of said city; and the mandate in this case will issue without further delay.

ARMSTRONG and DOYLE, JUDGES, concur.