## Ex parte TOM. J. JOHNSON.

No. A-2782.    Opinion Filed January 4, 1917.

(161 Pac. 1097.)

1.  **JURY—Jury Trial—Right to.** The Bill of Rights of the Constitution of Oklahoma declares that: "The right of trial by jury shall be and remain inviolate, and a jury for the trial of civil and criminal cases in courts of record, other than county courts, shall consist of twelve men; but, in county courts and courts not of record, the jury shall consist of six men." Const. art. 2, sec. 19. And that: "In all criminal prosecutions the accused shall have the right of a speedy and public trial by an impartial jury of the county in which the crime shall have been committed." Const. art 2, sec. 20. **Held,** that a person prosecuted under a city ordinance for an offense which is also made a misdemeanor by statute, or an ordinance, the punishment for a violation of which is or may be imprisonment, is entitled to a jury trial in the court of original jurisdiction, and to accord to the accused the right to be tried by a jury in the county court on appeal after conviction in the municipal court, does not satisfy the requirements of the Constitution. In such case a judgment of conviction in the municipal court, not based upon a verdict of guilty by a jury, is void.

2.  **MISDEMEANORS—"Municipal Courts"—"Offense."** Section 1, c. 147, Sess. Laws 1915, defines municipal courts "to mean and include all the courts of the State of Oklahoma, organized and existing in the various towns and cities thereof which shall have and possess, under the laws of the state, original jurisdiction to hear and determine offenses against the ordinances

of municipalities," and defines an "offense" "to mean the doing of some act or the failure to perform some duty, commanded by some municipal ordinance, or by law, for the violation of which a penalty or punishment is provided thereby," and declares such proceedings to be "criminal in their nature; and except as otherwise specifically provided, shall be governed by, and subject to, general laws relating to criminal procedure." **Held,** that in respect to "offenses" under city ordinances, the punishment for which is or may be imprisonment, conviction of the accused without a jury trial would be in contravention of section 7 of the Bill of Rights, providing that "No person shall be deprived of life, liberty, or property, without due process of law," because under the constitutional provisions a jury is an essential part of every tribunal for the trial of criminal cases, and such constitutional provisions place the right to trial by jury beyond the power of the Legislature to abrogate or abridge it, and it is beyond the power of the Legislature to confer jurisdiction on any tribunal to try criminal cases without providing for jury trials.

3.    **JURY—Constitutional Guaranties—Evasion.** The constitutional guaranties intended to secure the liberty of the citizen and the right to a trial by jury cannot be evaded by the nature of the powers vested in the municipality under its charter, or the nature of the jurisdiction conferred upon the municipal court.

Application by Tom J. Johnson for writ of *habeas corpus*. Writ allowed, and petitioner discharged.

On behalf of Tom J. Johnson, a duly verified petition for writ of *habeas corpus* was presented to the Presiding Judge of this court representing that he is illegally restrained of his liberty by the officers of the city of Oklahoma City, and is now compelled to work on the highways near the city of Edmond in Oklahoma county by some contract arrangement existing between the officers of the city of Oklahoma City and the officers of the county of Oklahoma.

It is further averred in said petition:

"That the cause of said restraint, according to the best of the knowledge and belief of the petitioner is, that the said Tom J. Johnson, petitioner herein, was convicted

of the crime of vagrancy on the 8th day of July, 1916, in the municipal court of the city of Oklahoma City, Oklahoma, and was, by said court on said 8th day of July, 1916, fined in the sum of ninety-nine dollars ($99.00) and imprisonment in the city jail of Oklahoma City for a period of ninety (90) days. Your petitioner alleges and states that said restraint is illegal and void in this: That the municipal court of Oklahoma City, State of Oklahoma, had no jurisdiction to fine your petitioner in the sum of ninety-nine dollars and imprison him for a period of ninety days in the city jail of Oklahoma City, Oklahoma. That said judgment is illegal and void and in violation of the Constitution of the State of Oklahoma, the general laws of said state and the charter of said city of Oklahoma City. Your petitioner further says that he is illegally restrained of his liberty and illegally and unlawfully compelled to work with convicts upon the highways of Oklahoma county, State of Oklahoma, under and by virtue of some contract or arrangement between the said Oklahoma City and the authorities of Oklahoma county, Oklahoma, and that said contract or arrangement whereby he is compelled to work upon the public highways of Oklahoma county, Oklahoma, is in violation of section 2, article 23, of the Constitution of the State of Oklahoma, and is unlawful, unconstitutional and void. Wherefore your petitioner prays the honorable court to grant a writ of *habeas corpus,* and that he be discharged, without delay, from such unlawful imprisonment."

A writ of *habeas corpus* was issued, and in response thereto the officers to whom it was directed produced the petitioner in court, and at the same time filed their answer and return duly verified, which, omitting formal parts, is as follows:

"RETURN OF CHIEF OF POLICE AND SHERIFF.

"Comes now W. B. Nichols, chief of police of Oklahoma City, and M. C. Binion, sheriff of Oklahoma county, Oklahoma, and for return of the writ of *habeas corpus*

issued herein on the 12th day of July, A. D. 1916, shows to the court that said Tom J. Johnson is in custody by reason of the following facts: That heretofore, to wit, on July 8th, 1916, a complaint was filed in the municipal court of the city of Oklahoma City charging the said Tom J. Johnson with vagrancy, as is shown by the copy of the complaint hereto attached, marked Exhibit A, and made a part hereof. That thereafter, on the 8th day of July, A. D. 1916, the said Tom J. Johnson was duly arraigned in the municipal court of the city of Oklahoma City, entered a plea of not guilty, and after trial duly had before said court the said Tom J. Johnson was found guilty of being a vagrant as defined by section 702 of the Revised Ordinance of the city of Oklahoma City, and was duly adjudged to pay a fine of ninety-nine ($99) dollars and costs in said case, and to be confined in the city jail of the city of Oklahoma City for a period of ninety (90) days. That at the time said judgment and sentence was imposed upon the said Tom J. Johnson, he was notified of his right of appeal, and that no appeal from said judgment and sentence has been taken, and that thereafter on the 8th day of July, 1916, the said Tom J. Johnson was duly committed to the city jail of Oklahoma City by virtue of a *mittimus* duly issued and by said municipal judge, a copy of which is hereto attached, marked Exhibit B and made a part hereof. That thereafter on the —— day of July, 1916, by virtue of an agreement existing between the board of county commissioners and the board of city commissioners of the said city of Oklahoma City, and said Tom J. Johnson was turned over to and was received by said board of county commissioners for the purpose of working the said Tom J. Johnson upon the public highways of Oklahoma county. That prior to the turning of said Tom J. Johnson over to the board of county commissioners, the said Tom J. Johnson had been sentenced to the city jail for the offense of vagrancy and had not paid the fine and costs assessed against him. That said county commissioners have not and will not pay for the services of the said Tom J. John-

son, except the cost of his maintenance. Wherefore, respondent having duly answered said writ prays that said writ of *habeas corpus* be denied and that the said Tom J. Johnson be returned to the custody of your respondents.

"W. B. NICHOLS, M. C. BINION, *Respondents.*"

On July 15, 1916, petitioner being present in court in person and by his counsel it was agreed that the case should be submitted to the court on the facts stated in the petition and the answer thereto. Upon the conclusion of the arguments and after a consideration of the same the decision and opinion of the court were delivered by the Presiding Judge, holding that the petitioner is unlawfully restrained of his liberty as averred, and it was ordered that he be discharged from further custody and go hence without day.

O. A. *Cargill* and *Hainer, Burns & Toney,* for petitioner.

B. D. *Shear,* Municipal Counselor, and *John Embry,* Co. Atty., for respondents.

DOYLE, P. J. (after stating the facts as above). From the petition upon which the writ issued and the answer thereto, it appears that the petitioner was convicted in the municipal court of Oklahoma City on a charge of vagrancy as defined by the city ordinance and was sentenced to imprisonment for 90 days and to pay a fine of $99, and failing to pay said fine that he be further imprisoned until the same is satisfied. That he was then transferred to the custody of the overseer of the Oklahoma county convict road gang, who put him at hard labor on the public roads of the county.

Counsel for the petitioner contend that his conviction was illegal and void in that the municipal court was with-

out jurisdiction to render a judgment imposing a jail sentence and fine, because he was denied his constitutional right to a jury trial.

The argument of counsel for respondents is that the general authority given under certain sections of the charter of Oklahoma City to pass all necessary ordinances is sufficient, although there is no specific grant of authority in the charter giving the municipal authority the power to impose a fine or an imprisonment for a violation of any ordinance; that in addition to the general grant of powers in the city charter, all specific grants of authority given to a city council of a city of the first class under the Constitution and laws of the state in force at the time of the adoption of the charter would by reference and by adoption under those sections of the charter be conferred upon the board of commissioners of the city of Oklahoma City, including, among others, section 601, Rev. Laws 1910, which is the only section in the statute that specifically grants power to a city to impose a fine of not to exceed $100 and imprisonment not to exceed three months or both such fine and imprisonment for a violation of an ordinance. That compelling a city prisoner to work on the county roads is no part of the judgment and sentence pronounced upon him by the municipal court, as this authority depends upon the agreement between the board of city commissioners and the board of county commissioners, which agreement is not within the inhibition of the Constitution providing: "That contracting of convict labor is hereby prohibited." Const. art. 23, sec. 2. And it is argued that the statute providing for appeals from judgments of conviction in municipal courts to county courts sufficiently recognizes and satisfies the constitutional right to a trial by jury;

the same being section 2, c. 147, Sess. Laws 1915, entitled "An act to regulate appeals from judgments of municipal courts, prescribing the procedure thereof, and repealing all laws in conflict herewith."

This presents the principal question for decision in the case.

The pertinent sections of said act are as follows:

"Section 1. Definitions. The term 'municipal courts' as herein used is hereby defined to mean and include all the courts of the State of Oklahoma, organized and existing in the various towns and cities thereof which shall have and possess, under the laws of the state, original jurisdiction to hear and determine offenses against the ordinances of municipalities, and an 'offense' is hereby defined to mean the doing of some act, or the failure to perform some duty, commanded by some municipal ordinance or by law, and for the violation of which a penalty or punishment is provided thereby. Such proceedings are hereby declared to be criminal in their nature; and except as otherwise specifically provided, shall be governed by, and subject to, general laws relating to criminal procedure.

"Sec. 2. In all cases before a municipal court, except a judgment rendered on confession, an appeal may be taken by the defendant to the county court, and to such court only, where the trial thereof shall be had *de novo* on questions of both law and fact.

"Sec. 3. No such appeal shall be allowed, however, unless the defendant shall, within ten days after the rendition of such judgment, enter into a recognizance payable to said municipality, to be approved as to amount, form, and sureties, by the trial judge, in the penal sum of not less than fifty dollars nor more than five hundred dollars, and in no case less than double the amount of fine and cost."

"Sec. 8.   In the trial of said cause in the county court it shall be the duty of the court to try the case in the same manner that it should have been tried before the municipal court, except that upon demand of either party a jury shall be called to try the issues joined in said cause."

The constitutional provisions securing the right of trial by jury are the following declarations of the Bill of Rights:

"Sec. 19.   The right of trial by jury shall be and remain inviolate, and a jury for the trial of civil and criminal cases in courts of record, other than county courts, shall consist of twelve men; but, in county courts and courts not of record, a jury shall consist of six men.

"Sec. 20.   In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed."

The right of "trial by jury" secured by the first clause in section 19 of the Bill of Rights includes the elements of trial by jury as they were known and understood by the framers of the Constitution and the people when they adopted it.   By both provisions the right of trial by jury is preserved in all cases, with such modifications as are specified, as it existed at the time of the adoption of the Constitution.   And both secure the right of one accused of crime to demand a trial by jury, without regard to the name or grade of the offense charged against him.   Ordinarily the right of trial by jury will be presumed in all cases where it existed at the time of the adoption of the Constitution.

The framers of our Constitution in which this right is so sedulously guarded well knew that a trial by jury

afforded the best protection for innocence, and the surest mode of punishing guilt, yet discovered among men. They knew very well that no people could be free under a government which had the power to punish without restraint. Hamilton expressed in the Federalist the universal sentiment of his time, when he said that:

"The arbitrary power of conviction and punishment for pretended offenses had been the great engine of despotism in all ages and all countries."

The declarations of the Bill of Rights securing the right of trial by jury are prohibitions operating upon the legislative as well as positive commands to the judicial department, and the doctrine is elementary that while the Legislature may extend this right, it is beyond the power of the Legislature to abridge, impair, or materially change the right in any of its essential features. Article 6 of the Amendments to the federal Constitution is almost identical in its terms with section 20 of our Bill of Rights.

The principles which underlie the question here presented have received careful consideration in several cases before the Supreme Court of the United States. The following cases define the right as it existed when our Constitution was adopted: *Reynolds v. United States,* 98 U. S. 148, 25 L. Ed. 244; *Callan v. Wilson,* 127 U. S. 540, 8 Sup. Ct. 1301, 32 L. Ed. 223; *American Pub. Co. v. Fisher,* 166 U. S. 467, 17 Sup. Ct. 618, 41 L. Ed. 1079; *Thompson v. Utah,* 170 U. S. 343, 18 Sup. Ct. 620, 42 L. Ed. 1061; *Capital Traction Co. v. Hof,* 174 U. S. 5, 19 Sup. Ct. 580, 43 L. Ed. 873; *Black v. Jackson,* 177 U. S. 349, 20 Sup. Ct. 648, 44 L. Ed. 801; *Rassmussen v. United States,* 197 U. S. 516, 25 Sup. Ct. 514, 49 L. Ed. 862.

In the case of *Callan v. Wilson, supra,* the Supreme Court of the United States, passing upon the precise question raised here, held that:

"To accord to the accused a right to be tried by a jury, in an appellate court, after he has been once fully tried, otherwise than by a jury, in the court of original jurisdiction, and sentenced to pay a fine or be imprisoned, * * * does not satisfy the requirements of the Constitution."

In that case it appears that by an information filed by the United States in the police court in the District of Columbia the petitioner Callan, with others, was charged with the crime of conspiracy, and having been found guilty by the court, he was sentenced to pay a fine of $25, and upon default in its payment to suffer imprisonment in jail for the period of 30 days.

Mr. Justice Harlan, delivering the opinion of the court, in part, said:

"The third article of the Constitution provides that 'the trial of all crimes, except in cases of impeachment, shall be by jury and such trial shall be held in the state where the said crime shall have been committed; but when not committed within any state, the trial shall be at such place or places as the Congress may by law have directed.' The Fifth Amendment provides that no person shall 'be deprived of life, liberty, or property, without due process of law.' By the Sixth Amendment it is declared that 'in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have

the assistance of counsel for his defense.' The conten-
tion of the appellant is, that the offense with which he is
charged is a 'crime' within the meaning of the third
article of the Constitution, and that he was entitled to be
tried by a jury; that his trial by the police court, without
a jury, was not 'due process of law' within the meaning
of the Fifth Amendment; and that, in any event, the
prosecution against him was a 'criminal prosecution,' in
which he was entitled, by the Sixth Amendment, to a
speedy and public trial by an impartial jury.   *   *   *
It would be a narrow construction of the Constitution to
hold that no prosecution for a misdemeanor is a prose-
cution for a 'crime' within the meaning of the third
article, or a 'criminal prosecution' within the meaning of
the Sixth Amendment.   And we do not think that the
amendment was intended to supplant that part of the
third article which relates to trial by jury.   There is no
necessary conflict between them., Mr. Justice Story says
that the amendment, 'in declaring that the accused shall
enjoy the right to a speedy and public trial by an im-
partial jury of the state or district wherein the crime
shall have been committed (which district shall be previ-
ously ascertained by law), and to be informed of the na-
ture and cause of the accusation, and to be confronted
with the witnesses against him, does but follow out the
established course of the common law in all trials for
crimes.'   Story, Const. par. 1791.   And as the guarantee
of a trial by jury, in the third article, implied a trial in
the mode and according to the settled rules of the common
law, the enumeration, in the Sixth Amendment, of the
rights of the accused in criminal prosecutions, is to be
taken as a declaration of what those rules were, and is
to be referred to the anxiety of the people of the states to
have in the supreme law of the land, and so far as the
agencies of the general government were concerned, a
full and distinct recognition of those rules, as involving
the fundamental rights of life, liberty, and property.
This recognition was demanded and secured for the
benefit of all the people of the United States, as well those

permanently or temporarily residing in the District of Columbia, as those residing or being in the several states. There is nothing in the history of the Constitution or of the original amendments to justify the assertion that the people of this district may be lawfully deprived of the benefit of any of the constitutional guarantees of life, liberty, and property—especially of the privilege of trial by jury in criminal cases."

In answering the argument that the provisions of the act of Congress which gave a party convicted in the police court a right of appeal and the right of trial by jury in a higher court, the learned justice said:

"These provisions, undoubtedly, secure the right of appeal from the police court to the Supreme Court of the district, and a trial by jury in the latter court. But the fact remains that the accused may, under the statute, be tried in the court of original jurisdiction, upon the issue of guilt or innocence; and by its judgment, unless he gives security for his appearance in another court, he may be deprived of his liberty. The police court is not, in such cases, an examining court merely, but a trial court, in the fullest sense of those words."

And after reviewing the authorities upon this subject, the learned justice concludes:

"We cannot assent to that interpretation of the Constitution. Except in that class or grade of offenses called petty offenses, which, according to the common law, may be proceeded against summarily in any tribunal legally constituted for that purpose, the guarantee of an impartial jury to the accused in a criminal prosecution, conducted either in the name, or by or under the authority of the United States, secures to him the right to enjoy that mode of trial from the first moment, and in whatever court, he is put on trial for the offense charged. In such cases a judgment of conviction, not based upon a verdict of guilty by a jury, is void."

In the case of *Bettge v. Territory,* 17 Okla. 85, 87 Pac. 897, by the unanimous decision of the Supreme Court of Oklahoma Territory, it was held that:

"Under the provisions of the federal Constitution, the guarantee of an impartial jury in a criminal prosecution, secures to the accused the right of a jury trial from the first moment, and in whatever court he is put on trial for the same offense charged."

And see *Miller et al. v. State,* 3 Okla. Cr. 457, 106 Pac. 810.

In the case of *Miller v. Commonwealth,* 88 Va. 618, 14 S. E. 161, 342, 979, 15 L. R. A. 441, the Virginia Supreme Court of Appeals held:

"A jury trial in the first instance is guaranteed by a constitutional provision for trial by jury and the right to a jury trial on appeal will not satisfy such constitutional provision where a jury is not allowed on the original trial."

To the same effect is *Taylor v. Reynolds,* 92 Cal. 573, 28 Pac. 688.

By the provisions of the statute above quoted the right of appeal is made to depend upon the recognizance. If this is not entered into by the prisoner with approved sureties, which he may or may not be able to procure, then the party prosecuted has no appeal and is denied his right to a trial by jury.

It is a matter of common knowledge that in many cases before the police court the prisoner by reason of his poverty is unable to give a good and sufficient bond, and to deny the right of trial by jury in the court having original jurisdiction of the cause would be in many instances an absolute denial of one of the most sacred

rights inherent in the people; and in effect would be a denial of the equal protection of the law.

It has been well said that under our Constitution "there is none so great or powerful as to be exempt from the just penalties of the law, and none so poor and humble or so low as to be unworthy of its protection," and we should not forget that the worst as well as the best of men are entitled to the protection of the Constitution, and that a strained interpretation of the law which deprives a bad man of his right of personal liberty today may tomorrow deprive a good man of his equally—and in the eyes of some people perhaps more—sacred rights to property.

It will be observed that section one of the act already quoted defines a violation of an ordinance for which a penalty or punishment is prescribed as an "offense," and that proceedings for such violations are declared to be criminal in their nature, "to be governed by, and subject to, general laws relating to criminal procedure." It follows from the view we take that in respect to "offenses" under city ordinances the punishment for which is or may be imprisonment, conviction of the accused would be in contravention of section seven of the Bill of Rights, providing that "no person shall be deprived of life, liberty, or property, without due process of law," because under the constitutional provisions a jury is an essential part of every tribunal for the trial of criminal cases.   Both provisions are intended to place the right beyond the power of the Legislature to abrogate or abridge it, therefore it is beyond the power of the Legislature to confer jurisdiction on any tribunal to try criminal cases without providing for jury trials.

The ordinance in question defines the offense of vagrancy in the identical language of the Penal Code. Section 2515, Rev. Laws 1910. The maximum punishment prescribed by the ordinance is 90 days' imprisonment, and a fine of $100; that prescribed by the statute is 30 days' imprisonment, and a fine of $100. It would be an insult to the commonest understanding to say that by virtue of the powers conferred on municipal courts the accused could be submitted to the greater punishment for the same act without a trial by jury, because the prosecution was instituted in the municipal court.

If we needed evidence of the value of the right of trial by jury, we would find abundance of it in the record before us. A citizen is arrested without warrant, is brought before the municipal court, is summarily convicted on hearsay testimony, and is given the maximum sentence, which in effect amounts to six months' penal servitude. He is poor, and by reason of his poverty he is unable to give an appeal bond; on the *mittimus* he is then by virtue of a contract between the city and the county placed in the custody of the overseer of the county chain gang to serve out the sentence imposed. The punishment imposed in its nature and character is the same as that imposed for crimes against the state. It cannot be that such punishment can be imposed in Oklahoma by the *ipse dixit* of a police judge. If the sentence can be for six months, it may be for 12 months if the Legislature should permit it. Truly it is said that "summary judgment is but judicial despotism." The state and the public have an interest in the preservation of the liberties of the people and will not allow the citizen to be deprived of his liberty without due process of law.

Process which tries a man without formality for some petty municipal offense and punishes him in the same manner as, and along with, criminals violating the laws of the state, with no right to a jury trial, is not due process of law. The conclusion necessarily follows that the constitutional provisions guaranteeing to the accused the right of trial by jury secure the right of such a trial in the court having original jurisdiction. In so far as the opinions in the case of *In re Simmons,* 4 Okla. Cr. 667, 112 Pac. 951, 5 Okla. Cr. 399, 115 Pac. 380, and *Meloy v. City of Woodward,* 7 Okla. Cr. 16, 120.Pac. 1119, conflict with this opinion, they are overruled.

The right of a trial by jury is only one among the several rights enumerated in the Bill of Rights. They are all necessary to a complete enjoyment of that personal liberty which is our birthright, and which it is the duty, not only of the courts, but of every citizen to jealously guard. They are all designed to safeguard the accused in all criminal prosecutions, so that no person may "be deprived of his liberty except by the law of the land, or the judgment of his peers."

For the reasons stated we are of the opinion that the right to a trial by jury cannot be evaded by the nature of the powers vested in the municipal corporation, or the nature of the jurisdiction conferred upon municipal courts. It follows that the proceedings had upon the trial and conviction of the petitioner were illegal and void, and said court was without jurisdiction to render the judgment and sentence.

The petitioner must therefore be discharged from custody.

ARMSTRONG and BRETT, JJ., concur.